ANDREW J. COFFEE, PLAINTIFF IN ERROR, VS. JAMES M. GROOVER ET AL., DEFENDANTS IN ERROR.

1. A former adjudication of the cause of action is not proper ground of a motion to dismiss, but is matter of defence.

2. In ejectment all matters of legal defence (excepting special denials of possession and denials of adverse claim under the statute) may be given in evidence under the plea of not guilty. Special pleas of matter affecting the legal title or in estoppel should be struck out. A judgment sustaining a demurrer to such pleas will not preclude proof at the trial of the facts pleaded.

3. Grants of land by a government *de facto* of parts of a disputed territory in its possession are valid against the State which may be ultimately found to have the right, and the rights of the inhabitants to property acquired in good faith from the *de facto* government, are respected. Re-affirming Groover vs. Coffee, 19 Fla., 61.

4. When a doubtful or disputed boundary is settled by agreement between States and duly ratified, such agreement does not operate retrospectively so as to disturb titles to property.

5. When a deed does not locate the land described as being in a given county or State, oral testimony is competent to identify the premises as to location and boundaries.

6. A certified copy of a will as "a true copy from the records of this office," without any mention that the will had been duly proved or admitted to probate and containing no copy of the probate or record of the proper tribunal, is not legal evidence.

7. When a jury brought into a court a verdict in ejectment, in favor of the plaintiffs generally and for damages, and, before the verdict is entered in the record, the court instructed them to bring in a verdict in the form required by law, and directed that a proper form be prepared, which being done the jury retired and brought in their verdict in legal form, signed by their foreman, upon which judgment is entered, there is no error in the proceedings. A jury may vary or correct a verdict before they are discharged and before it is recorded : and a form of verdict prepared under the direction of the court, assented to by the jury, is sufficient.

8. A suit in ejectment is brought by seven plaintiffs, brothers and sisters, and one of them before trial dies unmarried and no execu-

tor or administrator is appointed, the remaining co-plaintiffs and her mother being her heirs at law inheriting equally her undivided one-seventh of the land. The mother inheriting one-seventh of the share of the deceased, to wit: one forty-ninth, and she not being a party plaintiff, the right of action for such mother's share does not survive to the six brothers and sisters; but the right of action for the entire residue of the land, to wit: forty-eight forty-ninths, does survive to the remaining plaintiffs, under the laws of this State and the rules of the Circuit Court. McClellan's Dig., 829, Sec. 73; C. C. Rules, 87.

Writ of Error to the Circuit Court for Jefferson county, to which the case was transferred from Madison county.

The facts of the case are stated in the opinion.

*Angus Paterson* for Plaintiff in Error.

In the year A. D. 1874 the plaintiff in error brought an action of ejectment against Mary J. Groover as executrix of the last will and testament of Charles E. Groover, deceased, in Madison Circuit Court; the said case was, on the application of the said executrix, transferred to the United States Court at Tallahassee, and the verdict and judgment of that court was against her, and the said Andrew J. Coffee went into possession of the land in controversy under said judgment.

And afterwards, to wit: The defendants in error brought this suit in Madison Circuit Court, being the heirs of Charles E. Groover, and the case was transferred to Jefferson county and tried there at the Spring term of said court, A. D. 1883. To review that judgment this writ of error is sued out.

The matter of the former trial was brought to the attention of the court by a motion to dismiss, and also by a plea to the jurisdiction and *res adjudicata*, which were overruled on the ground that the executrix was not a party nor

privy with the heirs.    We take the position that the executrix is a privy, and that a suit by or against the executrix binds the heirs under our statute.    Thomp. Dig., page 203, Sec. 5; McL. Dig., Sanchez's Adm'rs vs. Hart, 17 Fla., 507; Thompson vs. Campbell, 6 Fla., 546 ; Yulee vs. Canova, 11 Fla., 10, 56.

And especially when the case was transferred to the United States Court, because that court had jurisdiction of the whole matter, and the State court had no right to try it again.    Evans & Blade vs. Percefull, 6 Ark., 424 ; Elliott vs. Piersall, 1 Peters, 340 ; 2 Peters, 169.

A married woman cannot bring a suit at common law in her own right.    The case should be dismissed.    Smith vs. Smith, 18 Fla., 789 and 799.

When the United States purchased Florida from Spain she purchased all the territory of the Floridas; and the State of Georgia had no more right to take part of the territory than she would if it had been a part of the Spanish Dominion ; and all the territory to the established line belongs to the United States, and the United States alone has the right to dispose of lands, and a conveyance made by the United States is superior to all others.    Thomp. Dig., Treaty with Spain ; 1 Peters, 511 ; 7 Curtis, 686 ; Chisholm vs. Coleman, 43 Ala., (New Series), 204.

No statute of limitation will run against the government. Angell on Lim., Secs. 34 and 37 ; United States vs. Hoar, 2 Mason, 312.

The land in controversy is a part of Florida, proved by the plaintiff in error and admitted by the defendants. It has been conveyed by the United States, and a patent issued therefor, and the plaintiff in error has a perfect chain of titles from the United States, therefore the plaintiff in error has a superior title to all others.

It is the right of nations to establish and fix their bound-

aries, and all citizens and subjects are bound thereby, and grants issued · by these States must yield to the boundary thus fixed.   This applies to the States of this Union, with one exception, that is Congress must ratify it.   Poole vs. Fleegu, 11 Peters, 185 ; Rhode Island vs. Massachusetts, 12 Peters,·657; Gartice vs. Lee, 12 Peters, 511.

The Whitner and Orr line has been established by the States of Georgia and Florida.   Code of Georgia, pages 6 and 7, Sections 17 and 21 ; McC's. Dig., page 952, Sections 8 and 11.   And the line has been ratified by Congress.   See Act of Congress, 1872.

The land in controversy is in Florida, and has been conveyed by the United States ; therefore· the plaintiff has a title superior to those claiming under Georgia grants, even if Georgia claims title from Indians.   Angel on Lim., Sec. 412 ; Johnson vs. McIntosh, 8 Whea., 571.

The evidence shows that the Georgia grants do not cover the land in controversy.

The defendants in appeal claim Florida land and produce a grant, issued by the State of Georgia, to land that comes down to the Florida line, and they insist that the grant covers land over the McNeil line, but the evidence of G. S. Lanier, County Surveyor, shows, and also the plats with the grants show, that it only covers land to the McNeil line, and does not come south of it.   Brown vs. Huger, 21 How., 305.

The Georgia grants do not come further south than the Mc-Neil line, and therefore do not include the land in controversy.

And even if the grants covered the land the defendants fail to connect themselves in any way with them, for the deeds they produced do not show in what State the land described in them lies, and this defect cannot be cured by

parol testimony: hence the defendants are not entitled to recover.

The will of Charles E. Groover shows that the executrix had power to act with reference to the land, and should not have been ruled out. A certified copy under the seal was proper evidence.

The suit did not survive to the other defendants at the suggestion of the death of Annie E. Groover, and her administrator should have been made a party.

The verdict of the jury ought not to have been changed by counsel; he was only authorized to put it in form; he changed it, the whole to 48-49ths. Proffatt on Jury Trials, Secs. 443 and 444; Patterson vs. United States, 2 Wheat., 221.

The grounds set forth in the motion for a new trial were sufficient, as they were nearly all the objections, and a new trial should have been granted.

*T. L. Clarke* on same side.

The first, second and third errors assigned may be considered together, they being in substance:

1. That the court erred in refusing to dismiss the action on motion of Coffee, the ground of that motion being that the matter had already been adjudicated in favor of Coffee by United States Court.

2. That the Court erred in ruling that a judgment in U. S. Court against the executrix of Groover did not bind his heirs, and that the question may again be contested by the heirs.

3. That the court erred in sustaining the demurrer of Groover *et al.*, to second and third pleas, and in overruling these pleas.

The defence of *res adjudicata* was raised by both the mo-

tion to dismiss and the second and third pleas, and it is now unnecessary to determine which was the proper way to make this defence. Both were determined adversely to Coffee.

In the case of Sanchez's Administrators vs. Hart, 17 Fla., 507, this court held "that an administrator or, executor could maintain in this State, ejectment upon the title of his intestate or testator. That this right followed necessarily from the duties imposed upon him and from the express language of the statute defining his powers and rights." To enable a plaintiff in ejectment to recover he must show a title at least *superior* to the title of his adversary. If an administrator or executor can maintain ejectment upon the title of his intestate or testator, there exists but the greater reason that he should be competent to defend such action by setting up the title of the deceased. His corresponding right and duty to defend would appear to be more especially imposed by the statute. The statute gives to the executor or administrator the possession of the lands of the deceased; being so in possession, he is the party against whom the action should be brought. The summons in ejectment is "issued to the person in possession, and to all persons claiming adversely or entitled to defend the possession of the property claimed." Rules of Court in Common Law Actions, 83.

The possession of the administrator or executor is the possession of the heir. He is to all intents and purposes the tenant of the heir. The *lis pendens* is a notice to all parties claiming adversely to come in and defend, and Rules 84 and 85, following that just quoted, provide how they shall come in. It occurs to us that the rule referred to (83) was designed to meet just such cases as the one at bar. The suit was against the "executrix in possession and all persons claiming adversely or entitled to defend the

possession of the property claimed." The executrix appeared and removed the action by his petition to U. S. Court, when there was a trial and verdict and judgment for Coffee, under which he took possession of the premises. The defence of the executrix was the defence of the heirs and both are bound by the judgment in that action.

5. The fifth error assigned is that the court erred in deciding that a grant issued by the State of Georgia to lands within the limits of the State of Florida, is superior to a grant issued by the United States Government to the same lands, and that the title of the party holding the Georgia grant is superior to the title of the party holding under the United States Government.

It is admitted that the land in controversy is in Florida, and has always been in Florida. It was surveyed as Florida land by the United States Surveyors, and included in fractional section 29. This is shown by the testimony of Lanier, an old surveyor, who testifies that he traced the line only a few days before trial. Coffee testifies "that he came to Florida in 1839, and his brother then had this land in possession, and had cleared a part of it. That his brother had only a claim, the land not having been put on the market. That he, plaintiff in error, bought his brother's claim." This claim and possession go back prior to 1839. Three years afterwards, in 1842, the grant of the State of Georgia issues to Groover. This is the first we hear of Groover having any claim. Coffee perfects his title as soon as the United States issues her patent to the State of Florida. This was in 1857. After reciting this, Coffee says: "Mr. Chas. A. Groover had a clearing on part of the land in controversy and I had a part of the land in cultivation that was included in my deed and south of the Watson line, and as there was a dispute between myself and Charles A. Groover about said land we agreed to let it

remain as it was till Congress should settle it." The grants from the State of Georgia did not purport to convey to Groover any land south of the Florida line. Both plats show the southern boundary of these lots to be the Florida line. We must bear in mind that these grants state only the numbers of the lots and the quantity of land they contain without giving their extent east and west or north and south. Everitt P. Groover, one of the witnesses, gives the distance from their northern boundary to the Watson line, but failing to give the extent east and west does not show that it is necessary to come below the McNeil line to get all the land the grants call for. Lanier, the County Surveyor of Madison county, says he has surveyed entirely around fractional section 29, and that it extends north to the "McNeil line." That while he did not survey the "Watson line" he crossed it and saw that it passed through a large swamp that extends almost as far north as the "McNeil line." When shown the Georgia plats he says "they indicate no such swamp on their southern boundary. That he has been a deputy surveyor in Georgia and is acquainted with Georgia surveying, and that from an inspection of these plats he would say that these grants do not cover the land in controversy, because in Georgia the surveyors had to put down on their plats the face of the country, that is to mark the ponds, swamps, branches, &c. That these plats show no swamp on their south boundary, and if the grants come to the Watson line they would show the large swamp referred to."

But if the State of Georgia intended to grant as far south as the Watson line the case then stands thus: Prior to 1839 the Coffees came to Florida and took possession of the land as Florida territory, cleared and cultivated a portion of it. In 1842 the Groovers cover it with a Georgia grant. Coffee goes on and as soon as it is put in market gets the Uni-

ted States title to it. A dispute arises as to which State it is in and which has the better title. They agree to abide the action of Congress in the settlement of the line between the two States. When the line is finally located the land is clearly and certainly in Florida. The Groovers fail to keep faith and the legal contest commences. Now which has the better title, Coffee who first took possession and as soon as possible afterwards procured his title from the General Government, which was the real owner, or Groover, who, after Coffee had taken possession and cleared and was cultivating a portion of the land, procures a grant from the State of Georgia, which State it is now admitted did not own the land?

6. It is well settled that no person can by mere occupancy acquire title against the United States government. The State of Georgia certainly never had any rightful jurisdiction over this property. At best it was but a " squatter." The Coffees claimed and held possession of the land at the time of and before the State of Georgia attempted to grant the land to James Groover. Coffee perfected his title from the United States government before the establishment of the Orr and " Whitner line." Had he attempted to oust Groover by obtaining a title from Florida after the establishment of that line, then his action, to say the least of it, would have been inequitable. But both parties seeking to acquire the title to the land before the location and establishment of the line, and each having obtained a title from their respective States, we submit that it makes a far different case. Coffee having had a prior possession, and having, before the fixing of the line, obtained a title from the State of Florida in which the real legal title was vested, has all the equities supported by the prior legal right and the legal title emanating from the General Government.

7. Neither the deed from James Groover to Thomas A.

Groover, nor the deed from Thomas A. Groover to Charles A. Groover, show in what State the land they purport to convey is situated. The deeds appear to have been made in Georgia where the parties reside, the former locating the land in *Lowndes* county and the latter in *Brooks* county. Other States in the Union have counties bearing the same name, and as it nowhere appears that *Brooks* and *Lowndes* counties are the same county the location and description is indefinite, uncertain and insufficient. This deficiency should not have been supplied by parol testimony admitted against the objection of plaintiff in error.

8. The court refused to permit a certified copy of the will of Charles A. Groover to be read in evidence. The objection to its introduction was that it was not properly certified and did not appear to have been proved and admitted to probate in Florida. It is certified by the Ordinary of Brooks county, Georgia, as a copy from the records of his court, and has the seal of the court of Ordinary of Brooks county, Georgia, attached. This is sufficient to admit it as a record of a court of another State under our statute. McL. Dig., 513, Sec. 2.

The fact that the will is a record of the Court of Ordinary of Brooks county, Georgia, is conclusive of its probate in that court. No further proof is required to admit it to probate in Florida. McL. Dig., 987, Sec. 8.

Besides, if we apply the same doctrine to the will that the court has applied to the deeds no probate in Florida could be necessary. The will was made November 27, 1865. The testimony shows that Charles A. Groover died about this time and long before the establishment of the "Orr and Whitner" line. If Georgia could pass the land in Florida by her grants a probate of the will in her courts was certainly competent to establish the validity of the will and pass the title to the devisees therein named. Under the

will the wife and executrix is a necessary party to this suit. She takes a child's part in the property in controversy. It appears from the pleadings that some of the children are yet minors. The will postpones the division of the property till ·the youngest child becomes of age or marries. The executrix is consequently still in possession of the estate, and as such could maintain ejectment. Sanchez's Adm'rs vs. Hart, 17 Fla., 507.

Can the heirs sue till the administration is finished? Is not the right of action limited to executrix? If not, could both the executrix and the heirs prosecute separate suits for the property at one and the same time against Coffee? If we admit that either the heirs, or personal representatives of a deceased, may maintain ejectment upon his title, then certainly both may sue. And if the judgment in this cause is finally for Coffee the executrix may take her turn at him when he gets through with the heirs.

9. The action is for the recovery of the whole property and not for an undivided interest. Upon the suggestion of the death of Annie E. Groover the suit was revived against the objection of plaintiff in error in the names of all the surviving plaintiffs, and there was nothing in the pleadings or testimony concerning any undivided interest in the land. When the jury came into court they announced that they found for the plaintiffs and assessed their damages at $500— a verdict for the whole and damages for the detention of the whole. The counsel put the verdict in form and inserted forty-eight forty-ninths of the land, but kept all the $500 damages.

10. The grounds set forth in the motion for a new trial cover all the errors assigned. And for the reasons hereinbefore set forth a new trial should have been granted by the court below.

*Pasco & Palmer* and *C. W. Stevens* for Defendant in Error.

The defendants in appeal who were plaintiffs in the court below offer the following arguments against the positions taken by plaintiff in appeal in his citation of errors alleged by him to exist in the record of the judgment herein rendered in Jefferson Circuit Court.

1, 2 and 3. The first three errors assigned relate to a defence set up against the action of ejectment instituted by defendants in appeal against plaintiff in appeal; that he had recovered possession of the lands in dispute in an action tried in the United States Circuit Court against Mrs. Groover as executrix or administratrix of Charles E. Groover, through whom these defendants claim title as heirs. In the Circuit Court this plea was demurred to and the demurrer was sustained, and properly so.

(*a.*) If the facts as set up in the plea were a good defence the plaintiff in appeal could have availed himself of this defence under the plea of not guilty.

(*b.*) But they did not constitute a good defence, for it is well settled that a judgment against an administrator does not bind the heir. Freeman on Judg. §163; Bigelow on Est., 78, 79.

4. Some of the parties claiming title to the land are married women and have sued in their own names, their husbands joining with them, which is in accordance with the rule at common law and consistent with the decisions of this court. Bacon's Abr. Baron and Femme, 500; 1 Minor, 347; Lignoski vs. Bruce, 8 Fla., 269.

5 and 6. The questions covered by these alleged errors came before this court at the former appeal, and we do not propose to re-argue them unless the court so directs.

7. We think that the deeds sufficiently show where the

lands are located. But evidence is surely admissible to identify and locate the land in all actions of ejectment. 2 Greenl. on Ev., §308 ; 1 Greenl. on Ev., §310, and note, Hogans vs. Carruth, 18 Fla., 587.

8. The will was properly excluded. It was not probated, nor was it proved according to law. Stringer vs. Young, 3 Peters., 336 ; McC. Dig., 987, §8 ; 2 Greenl. on Ev. §315.

9. There was no variance between the verdict as originally brought in and as afterwards returned by the jury and recorded, and if there were, the jury had the right to change it, if they thought it did not speak the truth, as long as the case remained in their hands. Hilliard on New Trials, 118, 121 ; Proffatt on Jury Trial, 456, 457, 461, 463, and 464. The jury, under leave of the court and by consent of parties, separated late in the afternoon, after being charged by the court on the law of the case. They were to re-assemble in the morning for deliberation and it was expressly agreed that if their verdict was not in form it should be amended under the instructions of the court. Before deliberating in the morning they again came into the court and were further charged. They returned to their room and found a verdict for plaintiffs generally, and assessed damages at $500. Plaintiffs claimed 48 49ths of the land, and it only remained to describe what they claimed and there was no conflict in the testimony on this point. One of the joint owners had died after the last appeal had been decided. She owned an one-seventh interest in the land. All of this descended to her brothers and sisters, co-plaintiffs, six in number, except one-seventh (or one forty-ninth of the whole), which went to her mother who was not a party, leaving forty-eight forty-ninths in plaintiffs, which the jury found. No part of the damages belonged to the mother. The $500 was the amount found for plaintiffs and they did not change these figures. The

evidence would have supported a larger amount. Plaintiffs' attorneys wrote out a form of verdict under the direction of the court. Defendant's attorneys examined it and suggested no change, they only objected to it generally. The jury retired, filled out the form, signed it and brought it in as their verdict, and it was so recorded. It was in all respects such a verdict as they had a right to find and is supported by the evidence.

10. The merits are the same as when the case was here before. They were then so strongly with the Groovers that this court reversed the former judgment. At the second trial the jury was charged in accordance with the law as laid down by this court and the result was in harmony with the former decision here made.

THE CHIEF JUSTICE delivered the opinion of the court.

This was an action of ejectment brought by defendants in error to recover lands in Madison county, and tried in Jefferson on change of venue. A former trial resulted in a verdict for plaintiff in error, which was set aside on appeal by this court in June term, 1882. 19 Fla., 61.

The second trial, in March, 1883, resulted in a verdict and judgment for the plaintiffs below, defendants in error, and now the defendant below brings error.

The present record brings up questions of pleading which were not before this court at the former hearing, the plaintiff below having been the appellant.

The errors assigned will be considered in their order:

I. The *first* is that the court refused to dismiss the cause on motion of defendant below, on the ground that the matter had been adjudicated in the Circuit Court of the United States in his favor.

A former recovery relating to the same cause of action,

as between parties and privies, may be matter of defence as an estoppel, to be proved at the trial, but it is not good ground of a motion to dismiss, and the motion was properly denied.

II. The *second* assignment of error has no foundation in the record. We do not find that the court decided that a judgment as between the plaintiffs in error and the executrix does not bind the heirs of decedent. No such judgment was offered at the trial.

III. The *third* assignment is that the court erred in sustaining the demurrer to the pleas of *res adjudicata*.

In ejectment all legal defences may be made under the plea of not guilty, and the special denials mentioned in the statute. McC. Dig., 481. Special pleas of matter affecting the legal title, or in estoppel, only encumber the record and tend to embarrassment. Wade vs. Doyle, 17 Fla., 522; Neal vs. Spooner, *supra* 38. They should be struck out by the court *sua sponte*, or on motion or on demurrer, because they are not proper pleas; but a judgment sustaining a demurrer will not preclude proof on the trial of the facts so improperly pleaded. There was no error in the ruling.

IV. The *fourth* ground of error is that two of the defendants are married women, and they cannot maintain a suit at law in their own right, nor their husbands in the right of their wives, independent of them.

This assignment we do not think applicable to the case. The husbands and their wives are joined as plaintiffs here in the right of their wives. This is the correct practice. Tyler on Eject., 169; 1 Chitty's Pl., 82.

V. The *fifth* ground is "because the court erred in de- "ciding that a grant issued by the State of Georgia, to "lands outside of the State of Georgia, and within the "limits of the State of Florida, is superior to a grant is-

"sued by the United States Government to the same lands,
"and that parties holding the said lands in Florida by said
"Georgia grant, have superior title to one claiming under
"the U. S. Government": and the *sixth* ground is "because
"the court erred in deciding that a party holding land in
"Florida under a Georgia grant for a long time acquired a
"title superior to that of the United States Government,
"thereby deciding that the statutes of limitation could run
"against the government."

We do not understand this to be the ruling of the court
at the trial, in substance or in effect.

The testimony is substantially the same as that which
was before the court upon the former trial. See 19 Fla.,
68, *et seq.* It shows that the boundary line between Geor-
gia and the Territory, and the State of Florida, was uncer-
tain and in dispute; that in 1842 Georgia granted this land
to James Groover, describing it as land in what was then Ir-
win county, in Georgia; that the survey and plat by which
the grant was made were made in 1820 by the Surveyor-
General of Georgia; that the State of Georgia, through
all the departments of its government, and the local au-
thorities of Irwin and other counties, which were created
out of Irwin county, claimed and exercised control and ju-
risdiction of the territory as far south as the line known
as the Watson line, and the courts exercised jurisdiction,
civil and criminal; conveyances of land located there were
recorded in Georgia; people living there were summoned
as witnesses and jurors; the estates of people dying there
were administered in the courts of Georgia; lands were
surveyed, platted and granted by the authority of the gov-
ernment of that State down to the time of the establish-
ment and recognition of the "Whitner and Orr" line by
the States of Florida and Georgia, and by the Act of
Congress of April 9, 1872.

James Groover, the grantee of Georgia, was in possession of the land under the grant of 1842 at that time, and he and his grantees and the plaintiffs as heirs of such grantees remained in possession, improving and cultivating it, until they were dispossessed in 1876 by Coffee, against whom this suit is prosecuted.

No definitely marked boundary line between Georgia and the Spanish province of Florida, or between Georgia and the Territory or State of Florida, had ever been recognized by the respective governments until the Whitner and Orr line was recognized by Congress in 1872. The boundary was in doubt and in dispute up to that time when the Whitner and Orr survey, made under the authority of the respective States, was for the first time recognized, and grants made by Georgia down to the Watson line were also recognized. (We refer to the opinion of this court in Groover vs. Coffee, 19 Fla. R., 61, 76, for a more detailed statement of the action of the respective State governments on the subject.)

On the part of the defendant below, it was shown that the land in dispute was patented by the United States to the State of Florida, July 6, 1857, under an act of Congress of September 28, 1850, as "swamp and overflowed land," it being a part of fractional section twenty-nine, in township three, north, and range nine, east. On September 2, 1857, the Register of the Florida Land Office issued a certificate of purchase to McCall and Stripling, who assigned and conveyed to A. J. Coffee November 12, 1858, and on the 12th September, 1874, the Trustees of the Internal Improvement Fund of Florida executed a deed of the said section 29 to Coffee. Coffee testifies that in 1839 his brother had a "claim on this land and cleared a part of it before it came into market, and he bought his brother's claim; that Charles A. Groover had a clearing also on it, *north* of the

Watson line, Coffee's clearing being *south* of that line, and Coffee never took actual possession of the portion north of said line (which portion of section 29 is the territory in dispute) until after the act of Congress of 1872. The Groovers were dispossessed in 1876 by Coffee as appears by the testimony, and Coffee has been in possession since that time.

There is nothing in this record nor in the history of the government of the Territory or the State of Florida showing that the authorities of the latter exercised any of the powers of government over this portion of section 29 lying north of the Watson line up to the time of the survey of the Whitner and Orr line, which was recognized and adopted as the boundary February 8, 1861, by the Legislatures of Georgia and Florida, and recognized by Congress in 1872.

The court and jury did not decide, as is assumed by plaintiff in error, " that a grant by Georgia of lands outside her territorial limits and within the State of Florida is superior to a grant by the United States government," nor " that the statute of limitations could run against the government." What they did decide was that grants by a government *de facto* of parts of a disputed territory in its possession are valid against the State which had the right (12 Wheaton, 600 ); and that when a territory is acquired by treaty, cession or conquest, the rights of the inhabitants to property are respected and sacred. Rhode Island vs. Massachusetts, 12 Peters, 657, 749 ; s. c., 4 How., 591, 639 ; U. S. vs. Clark, 8 Pet., 436, 445. And the principle applies to the States of this Union. Poole vs. Fleegler, 11 Pet., 185, 209. In the latter case the court says (p. 210): "Although, in the compact, Walker's line is agreed to be in future the boundary between the two States, it is not so established as having been *for the past* the true and rightful boundary."

We decided this to be the rule in the present case when it was before us on the former appeal, (19 Fla., *supra*,) and the cause was tried the second time under the influence of the opinion and judgment of this court. We find no reason for modifying that judgment, and the error assigned is not sustained.

VI. The *seventh* error assigned is, that the court erred in admitting two deeds which do not show in what county or State the land described in them is situated, and it was improper to supply the deficiency by parol.

In Atwater vs. Schenck, 9 Wis., 160, a deed was offered which described the land but did not mention the county or State. An offer was made to identify the land by a witness and the court. said " this was competent evidence." To the same effect: Hogans vs. Carruth, 18 Fla., 587, 590; Cutter vs. Carruthers, 48 Cal., 178, 184; 2 Greenl. Ev., §303. The oral testimony in this case clearly proved the identity of the premises and the boundaries, and this was competent evidence. The deeds in this case hardly required any such explanation by parol.

VII. " The court erred in ruling out the last will and testament of Charles E. Groover, refusing to allow it to be read in evidence."

The paper offered was certified by the Ordinary of Brooks county, Georgia, that the " foregoing copy of the last will and testament of Charles A. Groover and codicil is a true copy from the records of this office." There is no certified copy of any proceeding of any court showing that the will had been duly proved or recorded by authority of law. McC. Dig., 513, §2; id., 987, §8. It was not competent evidence. 2 Greenl. Ev., §§310, 315.

VIII. The ninth error assigned is " in permitting a 'variance between the verdict as brought in by the jury at first and that prepared by the attorneys for plaintiffs, the ver-

Coffee v. Groover et al.—Opinion of Court.

dict of the jury being for the plaintiffs (defendants in error) and five hundred dollars damages, but the verdict as prepared by the attorneys being for forty-eight forty-ninths of the land and the same amount of damages."

The record shows that the jury brought in a verdict generally for the plaintiffs and assessed the damages at $500, which was not entered in the record. The court then directed plaintiffs' attorney to prepare a verdict in proper form, and a verdict having been prepared was submitted to the jury with instructions from the court to retire and examine the verdict as prepared, and if they found it to be their verdict to bring it in as such, and the jury then retired and returned it into court in writing. The jury found that the plaintiffs were " entitled to recover the interest claimed by them in the land in controversy, to wit: forty-eight forty-ninths " of the land, (describing it in full) " and the jury assess the plaintiffs' damages at five hundred dollars." This verdict was recorded and judgment entered upon it.

It is evident that if the verdict as first handed to the court had been recorded and judgment entered upon it, there would have been error, as the verdict was not in compliance with the statute. It was within the power and it was the duty of the Judge before recording such verdict to recommit the matter to the jury and call their attention to the want of form and instruct them how to correct it. This was the effect of the action of the court. In a similar case in Maryland, after the court had adjourned for the day the jury signed and sealed a verdict and delivered it to the clerk, and when called to the bar next morning, before the verdict was recorded, they were sent back to correct it, as it did not determine the issues joined in the cause to their full extent, and they found a new verdict which did. The court held that a judgment entered on the second verdict was correct. Edlin vs. Thompson, 2 Har. & Gill., 31. The rule is

that a jury may vary the form or correct a verdict before they are discharged and before it is recorded. Where the court put a verdict into form and it is read to the jury and they assent, this is sufficient. Rapps vs. Parker, 4 Pick., 238; Osgood vs. McConnell, 32 Ill., 74; Wright vs. Phillips, 2 Greene, 191; Burk vs. Comm., 5 J. T. Marsh., 675; Proffat on Jury Trials, Secs. 456, 461, and citations.

IX. As to the verdict for the forty-eighth forty-ninths of the land. The suit was commenced by seven plaintiffs who were shown to be the children and heirs at law of Charles A. Groover, (to whom the land was conveyed by the grantee of the original patentee from the State of Georgia,) and who died in possession in 1866. Annie E. Groover, one of the plaintiffs, died since this suit was commenced, leaving the six surviving plaintiffs and her mother as her heirs at law. It does not appear that she was married, or that there was an executor or administrator appointed. At her death her estate descended by our statute to her mother, brothers and sisters. McC. Dig., 468. Her interest in the property was one-seventh, and her mother inherited one-seventh of one-seventh, to-wit: one forty-ninth, and the brothers and sisters six-sevenths, and thus they became the owners of forty-eight forty-ninths.

Before the last trial the death of Annie E. Groover was suggested upon the record, and it was ordered that the action proceed at the suit of the surviving plaintiffs.

Section 42 of Chapter 1096, Laws of 1861, McC. Dig., 829, Sec. 73, provides that if there be two or more plaintiffs and one or more of them should die, if the cause of action survive to the surviving plaintiffs, the action shall not be thereby abated, but such death being suggested upon the record, the action shall proceed at the suit of the surviving plaintiffs.

Under this statute the suit was properly continued in

the names of the survivors, as their right of action to six-sevenths was not affected by the death of the co-plaintiff. At her death the legal title to six-sevenths of the one-seventh which had belonged to the deceased was vested, *cum onere*, in the survivors, and thus the entire right and title of the survivors, to-wit: forty-eight forty-ninths which had been involved in the issue, remained so.

By rule 87, Circuit Court rules, "in case of the death of one or more of several plaintiffs in ejectment, where the right does not survive to the remaining plaintiffs, the action may proceed at the suit of the surviving plaintiff for such share of the property as he claims," or the legal representative of the deceased may be made a co-plaintiff.

Under this rule the right of the mother to the one forty-ninth not being involved in the issue, as she was not a party to the suit, of course had not survived to the remaining plaintiffs.

The jury were clearly right in finding that the plaintiffs were entitled to recover such interest in the land as was thus vested in them by law.

As to the amount of the damages assessed, it is objected that the first verdict was for the plaintiffs generally, and for the whole property and $500 damages, and when the verdict was put in form for forty-eight forty-ninths the amount of damages was not also reduced.

We see no substance in this objection. The jury in the first instance found that these plaintiffs had suffered damage to the amount named and upon examination of the testimony that amount is fully supported. The testimony is that a fair average rental for the tillable land, (about eighty acres,) was one dollar and seventy-five cents per acre, and that Coffee had occupied it for about seven years. This testimony would sustain a much larger amount of damages in favor of these plaintiffs.

This answers the assignments of errors, as we understand them, and all the points made on the motion for a new trial. We find no error in the record and the judgment is affirmed.