## ROUNTREE v. BLOUNT.

(Filed September 18, 1901.)

1. VENDOR AND PURCHASER—*Mortgages—Religious Societies— —Trustees—Ultra Vires.*

   A congregation taking possession of a church can not contest the validity of a mortgage given by the trustees for the purchase-money on the ground that it was *ultra vires.*

2. VENDOR AND PURCHASER—*Contracts.*

   A party who enters land under a deed can not, by repudiating the deed, hold possession and deny the title of the vendor.

3. AMENDMENTS—*Pleading—Practice.*

   Where, in an action for possession of realty, the defendants set up a mortgage to plaintiffs and ask its cancellation, plaintiffs may amend by asking a foreclosure of the mortgage.

ACTION by C. D. and Annie A. Rountree against Caesar Blount and others, Trustees of Hickory Hill Baptist Church, heard by Judge *W. A. Hoke* and a jury, at May (Special) Term of the Superior Court of PITT County. From a judgment for the plaintiffs, the defendants appealed.

*Jarvis & Blow,* for the plaintiffs.
*A. M. Moore,* for the defendants.

DOUGLAS, J. This is an action to foreclose a mortgage given by the defendant Trustees upon the church property in their charge. The essential facts appear to be as follows: Sometime about the year 1877 the Hickory Hill Colored Baptist Church, of which the defendants are Trustees, bought the lot in controversy from Charles Rountree, father of the present plaintiff, for the sum of $350, payable in instalments, and erected a church thereon. The defendants

claim that the purchase-money has been fully paid and that they are therefore the owners of the land. The plaintiffs deny that the defendants ever paid for the land. It is admitted that the defendants never received any deed from Charles Rountree, and that the only deed they have to the land is that executed by the plaintiffs. This they seek to repudiate, with the resulting mortgage, on the ground that their Trustees had no authority to purchase; that at the time of said alleged purchase they were the equitable owners of said land, and that upon their re-entry thereon they were remitted to their former rights. We do not think that their contentions can be sustained.

It appears from the apparently uncontradicted evidence that on the 12th day of February, 1889, the plaintiffs were in possession of said property, which had been abandoned by the congregation of said church upon being notified of the plaintiff's claim of ownership; that on said day T. A. Wilkes, C. H. Henheran and Simon Harris, as Trustees of said church, purchased the said property from plaintiffs for the sum of $450, payable in eighteen instalments of $25 each, becoming due every three months; received a deed therefor, and executed back to the plaintiffs the mortgage in question to secure the purchase-money; that immediately after said purchase, and in consequence thereof, the congregation moved back into said church and still remain in possession, and that only one of said last-named instalments has been paid.

The defendant, Cæsar Blount, referring to the abandonment of the property, testified as follows: "The congregation said that before they would pay any more (having paid it once) they would leave the property, and did go away and take the bell." Again, on cross-examination, he said: "We moved out because the plaintiff claimed it, and moved back because he told us we could. The entire congregation moved

out when the present Mr. Rountree claimed the property, and moved back because he told us we could. After the notes and mortgages were executed, the entire congregation went back into the possession of the church under the contract made by the Trustees with plaintiff, to-wit, the deed from present plaintiff and the mortgage and notes now sued on."

We agree with his Honor that the congregation, by resuming possession and control of the church, under the purchase made by their Trustees, ratified such purchase, and can not now be heard to contest the validity of the mortgage on the sole ground that it was *ultra vires*. The learned counsel for the defendants admits that they can not repudiate the mortgage and hold the deed, but contends that they can repudiate the entire transaction and hold under their first contract of purchase. Whatever may have been their original rights under that contract, which does not appear ever to have been in writing, and which did not pretend to convey the legal title, we do not think that they are now available. At the plaintiffs' demand they voluntarily surrendered possession and subsequently re-entered as their vendees. Even if they could now repudiate the deed, which we think they fully ratified, they certainly could not retain possession and deny the title of him under whom they entered. We think this question is settled by the decision of this Court in *Farmer v. Pickens*, 83 N. C., 549.

We do not mean to say that a party in possession admits the title of another by taking merely a quit-claim deed, nor even when out of possession, if he does not enter under such deed.

The Statute of Limitations was not available on account of the admitted break in the defendants' possession.

Neither was there error in permitting the plaintiffs to amend their complaint so as to ask for a foreclosure of the mortgage, as no injustice appears to have been done to the

defendants. In fact, the defendants in their original answer themselves set up the fact of the mortgage and ask to have it cancelled.

The judgment of the Court below is
Affirmed.