# CHARLESTON.

IN THE MATTER OF THE APPLICATION OF P. H. SAMPLES, HOMER D. JARRETT AND JAMES A. OSBORNE, *Trustees,*
*v.* UNITED FUEL GAS COMPANY

(No. 5369)

IN THE MATTER OF THE APPLICATION OF M. F. OSBORNE, J. S. L. MYERS AND J. A. OSBORNE, *Trustees,*
*v.* UNITED FUEL GAS COMPANY

(No. 5370)

Submitted November 11, 1925. Decided November 17, 1925.

1. JUDGMENT—*Defense of Res Judicata Must be Properly Pleaded and Proved; Evidence of Former Adjudication Not Admissible on Verbal Motion to Strike Out Pleading, Unless Pleading on Face Forms Basis for Evidence.*

   When the defense of res adjudicata is relied upon, it must be properly pleaded and proved. Evidence of a former adjudication cannot be received or considered on a verbal motion to strike out a pleading, unless the pleading on its face forms a basis for the evidence. (p. 445.)

   (Judgments, 34 C. J. §§ 1491, 1494 [Anno.], 1509.)

2. RELIGIOUS SOCIETIES—*Members of Religious Society May Expressly or Impliedly Affirm Acts of its Trustees in Respect to Property Held in Trust for Them.*

   The members of a church, religious sect, society, congregation or denomination may expressly or impliedly affirm the acts of its trustees in respect to the property held in trust for them. (p. 447.)

   (Religious Societies, 34 Cyc. p. 1163.)

3. SAME—*Trustees of Religious Society, Petitioning for Authority to Lease Land Already Under Lease on More Advantageous Terms, Required to Confirm Existing Leases or Repay Money Received Thereunder.*

   Where the trustees of a church or religious organization, have in good faith executed oil and gas leases on real estate owned by the church, the legal title to which is held by them,

100 W. Va.

and have received large sums therefrom as delay rentals and which sums are accepted and used by the church or religious organization during a long period of years; and during the life of such leases, they petition a court of equity for authority to lease the real estate to another under a more advantageous lease contract offered them, equity will require a confirmation of the existing lease, or repayment of monies paid and received in good faith thereunder, although the leases were not in the first instance authorized under Section 9, Chapter 57, Code.   (p. 447.)

(Religious Societies, 34 Cyc. p. 1163 [Anno.]).

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Roane County.

Separate applications of P. H. Samples and others, trustees, and M. F. Osborne and others, trustees, to be allowed to execute leases on certain church property, opposed by the United Fuel Gas Company. From a decree for petitioners, the United Fuel Gas Company appeals. Cases considered together. Orders striking out defendant's petition and directing the trustees to lease the land in question.

*Reversed and remanded.*

*Harold A. Ritz* and *Raymond Dodson,* for appellant.
*S. P. Bell,* for appellees.

LIVELY, PRESIDENT:

These two cases involve the right of the trustees of the Osborne Mills Pastoral Charge of the Methodist Episcopal Church and the trustees of the Clendenin Pastoral Charge of the Methodist Episcopal Church, South, to lease two church lots for oil and gas exploitation, one of which lots (a one and one-fourth acre tract) was owned by them jointly and used by both for the purpose of religious worship. The other lot containing about three and one-half acres was owned by the M. E. Church, South. The two causes are governed by the same legal principles, and will be considered together.

The one and one-fourth acre tract had been leased by the trustees on January 30, 1907, to the United Fuel Gas Company under a five-year lease, and again to the same lessee

on December 14, 1911, for 20 years at an annual rental of $200.00, which rental had been paid up to February 25, 1924, and had been used by said trustees for church purposes. The total amount so paid amounted to $3,650.00. The three and one-half acre lot had been leased to the same lessee on November 21, 1912, for twenty years at an annual rental of $300.00, which had likewise been paid and used by the trustees, and amounted to the sum of $3,650.00 up to February 25, 1924. That part of the delay rental on the one and one-fourth acre tract going to the trustees of the M. E. Church had been paid to and accepted by them up to the time these proceedings were instituted, but the delay rentals on both lots going to the M. E. Church, South, had not been accepted by the trustees of that church after February 25, 1924, although tendered to them. The trustees had not procured authority or permission from the circuit court to execute these leases.

On December 4, 1924, these proceedings were begun. Petitions were filed by the trustees of each church, in the circuit court, asking authority and permission to lease the two lots under the provisions of chapter 57 of the Code, and stating that they had a bona fide offer from a responsible person to lease the three and one-half acre lot and drill a well to the gas producing sand within eight months or pay the sum of $2,500, and to deliver one-fourth of all the oil and gas produced therefrom as royalty. On the one and one-fourth acre lot four months time would be given for completing a well, or $2,500.00 would be paid, and in case oil or gas was produced the lessor should have one-fourth thereof. The proposed leases were alleged to be advantageous. Nothing was averred as to the leases already on the lots or of the payment and use of the monies derived thereunder. Upon publication and posting of the notices of the applications by the church trustees to lease, the United Fuel Gas Company appeared in court and filed its petition and "answer" in each case, setting out the facts of the former leases and payment of monies thereunder, and alleging that although the trustees had not obtained authority and permission to execute the leases to it, they and the churches were estopped from

denying their validity, because they had accepted and appropriated the monies derived therefrom ($3,650 under one lease and $3,600 under the other lease, $7,250.00 in all). The prayer of the petition and "answer" in each case is that permission to lease the lots to anyone other than petitioner, the present lessee, be denied, and the present leases be confirmed; or if this relief be denied the churches be required to refund the monies received by them under the leases.

The petitioning trustees demurred to the Gas Company's petition and "answer" in each of the two cases, and moved to strike out the same, on the ground that the Gas Company was not a proper or necessary party; that the matters alleged in each of the "answers" were immaterial and foreign to the matters set out in the petitions of the trustees, and for the further reason that the questions raised in the pleadings of the Gas Company were res adjudicata, having been decided in a prior proceeding to which it was a party. The record of the prior proceeding was presented when the motion to strike out was made. The court sustained said motion and struck out each of the petitions and "answers" of the Gas Company. A decree was entered on January 30, 1925, authorizing the trustees to execute oil and gas leases providing for a royalty of one-fourth of the oil and gas produced; and on the same day an order was entered confirming leases of both tracts to S. H. Cart. This appeal followed.

The issues are, the right of the Gas Company to have its leases confirmed; or to receive back from the churches the monies it has heretofore paid them thereunder.

Was it error to strike out the Gas Company's petition and deny it any relief?

The lower court sustained the motion to strike the petitions of the Gas Company, on the ground of former adjudication, and on the ground that they were not proper pleadings in the causes. In effect, the demurrer was sustained, as well as the motion to strike. We think the demurrer should have been overruled, for the petition sets up a state of facts which impel the conclusion that the Gas Company was interested in the lots sought to be leased, and that its rights, as stated in the petition, would be violated by granting the prayer

of the petition of the trustees; for the statute, section 9, chapter 57, Code, says that a sale or disposition of the property may be made as shall be right and proper, if the court be of the opinion that the rights of others will not be violated thereby. Not only must it appear to the court that the sale or lease prayed for is not inconsistent with the purposes for which the trust was created and that a majority of the members of the church, or a proper church committee or body selected by its rules and ecclesiastical policy desire the lease or sale, but that the rights of others will not be violated thereby. The publishing and posting of notices of the proceeding is for the purpose of notifying all persons interested in the proceeding, in order that they may protect their interests; and the proceeding is conducted as if it were a suit in chancery regularly brought and prosecuted.

Nor should the motion to dismiss the Gas Company's petitions on the ground of former adjudication have been sustained, for the reason that there was no pleading on which an issue of that character could be based. The defense of res adjudicata must be plead and proved. *Campe* v. *Board of Education,* 95 W. Va. 537. The defense may be raised by demurrer, but then the court is limited to the pleading to which the demurrer applies. It cannot look to other sources for the facts. A motion to dismiss, or a motion to strike out, is not a pleading on which evidence of a former adjudication can be introduced. *Hall* v. *Morris,* 219 Pac. (Okla.) 903; 34 C. J. 1058, Sec. 1494; *Desert King Mining Co.* v. *Wedekind,* 110 Fed. 873; *Jordan* v. *Jordan,* 175 Ala. 640; *Coffee* v. *Groover,* 20 Fla. 64, 77; Carlin's Hoggs Eq. Proc. 531, Sec. 403; *Beall* v. *Walker,* 26 W. Va. 741; 9 Ency. Pl. & Pr. page 616; *Horstman* v. *Bowermaster,* 217 Pac. 167; *Keown* v. *Hughes,* 265 Fed. 572. We have not examined the record of the former proceeding offered and considered by the trial court on the motion to strike appellant's petitions, to ascertain if that record would, in fact, sustain a plea of res adjudicata, because it is and was not properly brought into this record.

Appellant argues that even if the defense of res adjudicata had been submitted under a proper pleading, it constitutes

no bar to the relief asked for by the prayer of the Gas Company's petition; and in appellees' brief it is stated that reliance is not placed upon the doctrine of res adjudicata but upon the fact that under chapter 57, Code, a church organization cannot encumber or dispose of its property without the sanction of a court of equity, and without such sanction any attempt to so encumber or sell it, is an absolute nullity. If that proposition be sound, then the trial court has not erred, because the petition of the Gas Company says it may be true that its leases on the church lots were executed by the church trustees without sanction of the court as prescribed in chapter 57 of the Code.

To sustain the proposition that the Gas Company's leases are void and no rights accrue thereunder, it is argued that a church organization in respect to conveyance or encumbrance of its property is protected under the same principle of law which protects a married woman in the conveyance of her real estate, citing *McNeeley* v. *Oil Company,* 52 W. Va. 644; *Williamson* v. *Jones,* 43 W. Va. 562; and *Waldron* v. *Harvey,* 54 W. Va. 608. We can see·no good reason for the application of this principle to contracts or conveyances by a religious organization. At common law married women and infants received peculiar protection for reasons founded on experience. A married woman could make no valid contract in relation to her estate. Her most solemn acts in good faith for full consideration could not affect her interest in the estate. Her separate deed was void. *Lowell* v. *Daniels,* 2 Gray. 161; *Concord Bank* v. *Bellis,* 10 Cush. 276. And some courts say that the doctrine of estoppel in pais has no application, at common law, to married women. *Bemis* v. *Call,* 10 Allen 512; *Merriam* v. *Boston Ry. Co.,* 117 Mass. 241; *Williamson* v. *Jones,* 43 W. Va. 562, 27 S. E. 411. In the last cited case we held that a married woman cannot be barred by estoppel in pais, even by fraudulent conduct, from asserting her title to land; but that it was different as to her personal estate. But the common law. was not so tender of the contracts and conveyances of property owned by the churches. The statute, it will be observed, limits a religious body in the number of acres it may hold for religious pur-

poses. It prescribes the method by which the legal title may be held, and restricts the transfer of the legal and equitable title by a court proceeding in the nature of a chancery suit in order that the rights of no one would be injuriously affected, and that the transfer is not inconsistent with the purposes for which the trust was created and a proper disposition of the proceeds made. The common law principles governing contracts and conveyances of feme coverts and infants cannot be invoked in favor of religious organizations. The legal title of church property is held by trustees for the benefit of the church organization. The members are the cestuis que trust. They may ratify and confirm the unauthorized acts of the trustees, either expressly or impliedly. 34 Cyc. page 1163. Counsel for the Gas Company cite *Rountree* v. *Blount,* 129 N. C. 25; *McCallister* v. *Ross,* 155 Mo. 87; *Scott* v. *Methodist Church of Jackson,* 50 Mich. 528; and *French* v. *Barre,* 58 Vt. 567, which say that a church congregation may ratify the unauthorized contracts of its trustees, and may by conduct be estopped from denying their validity.

The proposition relied upon by counsel for the church trustees is that the leases made by them to the Gas Company and now in existence, are utterly void and could not be affirmed by the churches, because the circuit court had not given permission for the leases by proper decree. We cannot hold that such a contract is void and of no effect. Contracts of sale of church property are most usually made by the contracting parties before resort to the court proceeding for authority to sell. When that is done the court confirms the contract by giving permission to sell, if the purposes of the trust will not be violated, and the interest of no one is injuriously affected. The petitions of the trustees show that Cart, a responsible person, had offered them an advantageous contract which they and the church congregations were willing to execute. The contract is not complete until the court acts. It is somewhat similar to a purchase at a judicial sale, which requires confirmation by the court before it becomes complete. Such an agreement is not absolutely void. The payment of money thereunder would not justify the recipient in keeping it if the contract be not con-

firmed.    It is apparent that the gas leases were made
in good faith by both parties and payments received
thereunder by the churches for many years without question.
One-eighth of the oil was to be delivered to the trustees if oil
was found in paying quantities, and if gas was produced a
yearly sum was to be paid, equal to the delay rentals paid if
the lots were not drilled.    It made little difference to the
churches whether the lots were drilled.    The pleadings disclose
that it was gas territory only.    In 1924 the churches were of-
fered a better contract by a responsible person who agreed to
sink a well within four months on one lot, and within eight
months on the other, or pay as liquidated damages for delay the
sum of $2,500 in each case; and if oil or gas was found, one-
fourth thereof was to be delivered to the lessors, instead of a
fixed sum per year for a gas well.    The new lease contract was
vastly more advantageous to the churches than the old.    They
immediately repudiate the old leases as unauthorized and
void, because not directed by court order, and keep  the
$7,250.00 derived therefrom, under the theory that the Gas
Company has had value received therefor.    ''O tempora, O
mores!''    The delay rentals under the Gas Company's leases
kept alive the right of the lessee to drill at any time during
the term of the lease.    They were paid for that purpose, as
well as to reimburse the lessor for failure to drill.    By can-
celling the leases, the Gas Company is deprived of a substan-
tial right for which it has been paying these monies for years.
The lease contract with the Gas Company is not malum in se
nor malum prohibitum, and is not void as against public
policy.    It may be that it was incomplete and not binding on
the churches because of want of order from the court in
manner prescribed by the statute, but surely the churches
cannot repudiate the contract to which they have tacitly
assented to the extent of keeping the benefits received there-
under.    Both parties were chargd with knowledge that the
lease contracts were incomplete without judicial sanction;
but one should not be favored to the injury of the other be-
cause of that fact.    The trustees have come into a court of
equity, and they and their principals must do equity.    Equity
and good conscience demand that the Gas Company's leases

should either be confirmed, or that the monies the trustees have received thereunder be refunded, and the parties placed in statu quo as near as may be. The orders of January 30, 1925, striking out the Gas Company's petition and directing the trustees to lease the lots, will be reversed and the causes remanded.

*Reversed and remanded.*