## Schnee vs. Schnee and others.

*Presumptions in favor of land patent. — Recorded certificate of sale not constructive notice of purchaser's equitable title. — Estoppel.*

1. There is a presumption, in case of a patent of land issued by the proper officers of the United States, that it is valid and passes the title.
2. Such patent is *prima facie* evidence that all the preliminary steps to entitle the patentee thereto were regularly taken.
3. The purchaser for a valuable consideration from the patentee in possession, and whose patent is recorded in the proper register's office, takes free of all equitable claim as against the patentee's title of which he had no

*actual* notice, although documentary evidence of a mistake in the issue of the patent existed in the files and records of the general land office.

4. The record (even if authorized) in the register's office of the county where the land lies, of the certificate of purchase, issued to a party other than the patentee, is not constructive notice that the owner thereof has a paramount equitable right to the land; because the certificate is assignable, the assignee is entitled to the patent, and the assignment is not authorized to be recorded.

5. Where the owner of the certificate of sale received a patent running to his father, instead of himself, and delivered it to his father, and absented himself from the state for ten years, allowing his father to keep possession of the land, and to deal with it as his own, he would be *estopped* from setting up any equitable title to the land as against one who had purchased of the father in good faith, for a valuable consideration.

APPEAL from the Circuit Court for *Grant* County.

This action is explained by the following facts proved on the trial. In January, 1849, at the Mineral Point land office, the plaintiff, *Henry Schnee*, located military land warrant, No. 39,811, on 160 acres of land in the county of Grant, and on the 10th of September, 1850, through a mistake made at the General Land Office, the patent for the land so located by the plaintiff was issued to and in the name of *George Schnee*, father of the plaintiff, and one of the defendants in this suit. At this time, as well as for some time previous and for many years thereafter, *George Schnee* resided upon the land with his family, cultivating and improving the same. The plaintiff, then a single man, also lived and worked with him, and with the assistance of his father bought an adjacent farm in his own name. The patent for the land in question was received soon after its issue by the plaintiff, who then read it, observed the mistake in its being issued to his father instead of to himself, called his father's attention to the mistake, but nevertheless delivered the patent over to him, asked for no deed, asserted no claim to the land, and in 1852 departed to California, leaving his father in possession both of the land and the patent, and there remained until 1863.

In the meantime, the father, becoming involved, mortgaged the farm to one *Bailey*. Afterward he sold the equity of redemption to one *Long*, who several months later quitclaimed to *Bailey*. At the time of the conveyance to *Long*, *George Schnee* first informed *Bailey* that the certificate of location was in the name of his son *Henry*, though the patent was in his own name. None of the parties, however, supposed that *Henry* would ever assert any claims to the land, as he had never given any intimation to that effect, but had left his father to deal with the land as his own. But soon after his return from California, he instituted this suit, making *George Schnee*, *Long* and *Bailey*, parties defendant, and asking the court "to reform the mistake which had intervened in issuing" said patent, and declare void the conveyances to *Long* and *Bailey*. The court found that the plaintiff was estopped from insisting on any equitable title to the premises, and that the action should be dismissed. Judgment accordingly; new trial denied; and plaintiff appealed from the judgment.

*Dunn & Read* (with *S. U. Pinney*, of counsel), to the several points contended for on behalf of the appellant, and noticed and reviewed in the opinion, cited *Arnold v. Grimes*, 2 Clarke (Iowa), 1; *Astrom v. Hammond*, 3 McLean, 109; *Goodlet v. Smithson*, 5 Port. (Ala.) 245; *Moyer v. McCullough*, 1 Ind. (Smith) 211; *Jarvis v. Dutcher*, 16 Wis. 307; 5 Opinions of Attorneys-General, 7; *Howard Insurance Company v. Halsey*, 4 Seld. 271; *Bonner v. Ware*, 10 Ohio, 465; *Brush v. Ware*, 15 Peters, 93–110.

*Paine & Carter*, for respondent, relied on the equitable estoppel founded on plaintiff's acts, and his long acquiescence in the possession of both the premises and the patent by his father, citing *Sheldon v. Rockwell*, 9 Wis. 166; 3 Parsons on Contracts, 792, and cases there referred to.

DIXON, C. J. Where a patent has been issued by the proper

officers of the United States, the presumption is that it is valid and passes the legal title. It is, furthermore, *prima facie* evidence of itself that all the incipient steps had been regularly taken before the title was perfected by the patent. *Minter v. Crommelin*, 18 Howard (U. S.), 87, and cases cited. With this presumption existing in favor of the validity of the patent and of the title of the patentee, and evidence of the regularity of the proceedings upon which it was issued, with the patent recorded in the office of the register of deeds, and the patentee in full and exclusive possession of the land, holding and controlling it as his own, the defendant *Bailey*, having no notice in fact of the adverse claim of the plaintiff, became purchaser from the patentee for a valuable consideration. The history of his purchase, or the manner in which it came about, is immaterial. The important facts are, that he purchased for value, and without knowledge of the claim of the plaintiff. Now, putting the case in the most favorable light possible for the plaintiff, and more favorably, we think, than the evidence will authorize, namely, that he furnished the money to enter the land, receiving the certificate in his own name and for his own use, and that his father, the patentee, to whom the patent was issued through mistake, had no equitable title or interest, how stands the claim here presented? In our judgment, the title of the defendant *Bailey* is obviously superior. Indeed this is not denied by the learned counsel for the plaintiff, unless *Bailey* is to be affected with constructive notice of the plaintiff's claim; and this is the real question involved. It is argued, in the first place, that he is chargeable with such notice, and is not within the general rule protecting purchasers in good faith and for a valuable consideration, because the source of his title was a patent issued by the officers without authority, and documentary evidence of the mistake or want of authority existed on the files and records of the general land office at Washington, which were open to inspection. It was said that it was

his duty to have examined and ascertained the mistake, and if he neglected to do so he acted at his peril, and cannot be regarded as a purchaser in good faith. It will be readily perceived that this doctrine directly conflicts with the authorities above cited. A patent being the highest evidence of title from the government, and presumptively valid, the purchaser from the patentee, or those holding under him, is not required to go behind it, and to know that the previous steps to justify the making of it have been regularly taken. The law presumes that they were so taken, and on this presumption the purchaser may safely proceed until he receives notice to the contrary. The doctrine contended for may be true of different purchasers from the government of the same tract of land, which sometimes happens through mistake or otherwise. The last purchaser in such case may be, and no doubt is, chargeable with knowledge of any facts appearing by the records of the land office at which he purchases, or of the general land office, going to show the claim or title of the first purchaser. And the doctrine may, under some circumstances, perhaps, be carried somewhat farther; but it clearly does not apply to a case like this; and the authorities cited by counsel do not sustain his position. Those which may be supposed to bear most directly upon the question are 2 Clarke (Iowa), 1, and 1 Ind. 211. In the former, the grantee of the patentee was an assignee for the benefit of creditors, and it was held that he was *not an innocent* purchaser. The court say that, in point of *fact*, he was a purchaser with notice of all the plaintiff's rights; and in point of *law*, he stood in the same attitude; he was but the patentee himself, for he held but as trustee for the patentee's creditors. And the observation that, as between conflicting entries, the doctrine of notice is discarded, was made with reference to persons claiming the relation of assignees or judgment creditors of the patentee, who take no better title than the patentee himself has. And in the latter case the point decided was, that if a patent be issued by

mistake, or without authority, the party having the previous equitable title may, by bill in chancery, obtain from the patentee, or his *voluntary* grantee, the legal title.

In the second place, it is contended that *Bailey* was charge-able with notice because the duplicate certificate issued to the plaintiff was of record in the office of the register of deeds. It does not clearly appear from the printed case that the cer-tificate was so recorded, and we can find no statute which authorized the register to receive and record it. But, assuming that it was recorded, and the recording authorized, so that *Bailey* was bound to take notice of it and to know that the entry was made by the plaintiff, *Henry Schnee*, while the patent was issued to the defendant *George Schnee*, still that was no evidence or notice that the patent was wrongfully issued, or made without authority. It was no evidence, for the reason that the certificate was by law assignable, and that, being assigned, the patent would be made to and in the name of the assignee. Brightly's Dig. p. 498, § 222; Lester's Land Laws, 351. The patent having been issued to *George Schnee*, the presumption was that it was lawfully issued, and that the certificate had been assigned to him, which assignment was not required to be, and indeed could not have been, recorded in the office of the register of deeds.

But there are still other grounds upon which the claim of the plaintiff must be defeated. The land was entered in 1849, and the patent issued in 1850. The plaintiff received the patent from the office, and delivered it to his father. He was fully aware of the mistake at that time, and took no steps to rectify it, but went to California in the year 1852, leaving his father, as he had always theretofore been, in possession of the land and of the patent. He remained in California ten years and upwards, making no claim to the land, but allowing his father to hold and deal with it as his own. He returned from Cali-fornia in 1862, long after *Bailey* had acquired his interest,

and subsequently instituted this action.   Under these circumstances, we have no hesitancy in saying that he is estopped from setting up any equitable title to the land as against a purchaser for value from his father without notice of his claim.

*By the Court.* — Judgment affirmed.