## UNITED STATES v. LAAM et al.

### (Circuit Court, N. D. California. November 7, 1906.)

### No. 13,742.

1. **PUBLIC LANDS—SUIT FOR CANCELLATION OF PATENT—RIGHT OF UNITED STATES TO MAINTAIN.**

   The United States may maintain a bill in equity for the cancellation of a patent issued through inadvertence and mistake under the homestead law to a tract of land which had been previously selected by the state of California under Act March 3, 1853, c. 145, 10 Stat. 244, as indemnity school land, subject to the approval of the Secretary of the Interior, where the Secretary had directed the allowance of such selection, but it had not been formally approved and listed so as to pass title to the state, since the state is not in a position to maintain a suit in its own behalf to protect its equitable title, while the United States is under obligation to protect it.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 332.]

2. **SAME—EFFECT OF PATENT—NECESSITY OF DELIVERY.**

   A patent to public land, duly issued upon the decision of the proper officers and recorded in the record book kept in the Land Department of the government for that purpose, passes the title, and a delivery to the patentee is not necessary.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 311.]

3. **SAME—BONA FIDE PURCHASERS—PURCHASERS BEFORE PATENT.**

   A purchaser of land prior to patent from the government is not a bona fide purchaser entitled to protection as such in equity, but he must show that in his purchase and by the conveyance to him he acquired the legal title.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 368.]

4. **SAME—PURCHASER AFTER PATENT—CONSTRUCTIVE NOTICE OF RECORDS.**

   The rule that a purchaser of public land is required to take notice of the records and proceedings in the Land Department does not apply to a purchaser after patent, who may rely on its presumptive validity, and is not required to go behind it.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 368.]

5. **SAME—SUIT BY UNITED STATES FOR CANCELLATION OF PATENT—TENDER OF PURCHASE MONEY.**

   The United States in a suit to cancel a patent to public land, in order that it may convey the same to another party equitably and rightfully entitled to it, is not required to tender back the purchase money paid by the patentee.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 333; bona fide purchasers of public lands, see note United States v. Detroit Timber & Lumber Co., 67 C. C. A. 13.]

In Equity.   On demurrers to bill.

Robert T. Devlin, U. S. Atty.

L. F. Cooper and Titus, Wright & Creed, for respondents John H. and Elizabeth Laam.

George A. Sturtevant, for respondents E. M. Fine and Klamath Mill & Transportation Co.

WOLVERTON, District Judge.   Demurrers to amended bill of complaint, by which it is sought to set aside a patent issued by the government to the defendant John H. Laam.   The first is interposed by John H. Laam and Elizabeth Laam, and the second by E. M. Fine (named in the complaint "E. W. Fine"), and the Klamath Mill & Transportation Company.   By the bill it appears that the state of California on November 13, 1889, made a school land indemnity selection, No. 1,698, comprising the land in question, namely, the W. ½ of the S. W. ¼ of section 35, township 14 N., range 1 E., Humboldt base and meridian, in the Eureka land district, and which selection was allowed by the Department of the Interior on June 9, 1896; that on May 2, 1901, the defendant John H. Laam, under the provisions of section 2289, Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1388], and the regulations of the Department of the Interior, filed a homestead application, No. 4,423, to enter the land, at the same time entering into the possession of the same; that on July 8, 1902, the register and receiver of the Eureka land office issued a final certificate to Laam, and on the 21st of July, 1903, the President issued to him a patent therefor.   It is further shown that the defendant Laam was allowed to enter the land and to receive his certificate of final patent through the inadvertence, mistake, and oversight of the officers and agents of the General Land Office in overlooking the fact, which duly appeared of record, that said indemnity certificate No. 1,698 had been allowed by the Department of the Interior, thereby declaring the selection valid as it respects the land in dispute, and that because of the pendency of proceedings affecting the selection of other tracts of land embraced in the list no action was taken in making up a final "clear list" until the entire list was designed to be ready for approval by the Secretary of the Interior, which approval of a clear list and its certification to the state constitutes the muniment of title from the government.   The patent to Laam was never delivered to him, but remains in the General Land Office.   It further appears that subsequent to the issuance of the certificate to Laam, but prior to the issuance of patent, he granted, through mesne conveyance, the N. W. ¼ of the S. W. ¼ of section 35 to the Klamath Redwood Company, which company is the present holder of the alleged title thereto; that within the same time Laam, through mesne conveyances, granted to E. W. Fine, the S. W. ¼ of the S. W. ¼ of said section; and that subsequent to the issuance of such patent Fine conveyed to the Klamath Mill & Transportation Company.

The demurrers are general, assigning as reason therefor that the bill of complaint does not state facts sufficient to entitle the plaintiff to relief in equity.

The bill proceeds upon the theory that, the state of California having made a selection of the land in dispute as an indemnity selection and the same having been allowed by the Department of the Interior, the government thereby became obligated and equitably bound to convey to the state, and that having subsequently, through mistake, inadvertence, and oversight of its officers in the Land Department, allowed and permitted Laam to make his homestead entry, and having, through like mistake and inadvertence, issued to him a final certificate and patent, it is entitled in equity to have the patent annulled, and thus to be restored to a position in which it would be enabled to make good its obligation to the state. It has been judicially settled that:

"Where a patent has been fraudulently obtained, and such fraudulent patent, if allowed to stand, would work prejudice to the interests or rights of the United States, or would prevent the government from fulfilling an obligation incurred by it, either to the public or to an individual, which personal litigation could not remedy, there would be an occasion which would make it the duty of the government to institute judicial proceedings to vacate such patent. These principles equally apply where patents have been issued by mistake." United States v. Missouri, etc., Ry., 141 U. S. 360, 12 Sup. Ct. 13, 35 L. Ed. 766.

The quotation is from the headnotes, and is amply sustained by the following cases cited in its support: United States v. San Jacinto Tin Co., 125 U. S. 273, 286, 8 Sup. Ct. 850, 31 L. Ed. 747; United States v. Beebe, 127 U. S. 338, 342, 8 Sup. Ct. 1083, 1085, 32 L. Ed. 121. In the latter case the court says:

"And it may now be accepted as settled that the United States can properly proceed by bill in equity to have a judicial decree of nullity and an order of cancellation of a patent issued in mistake, or obtained by fraud, where the government has a direct interest, or is under an obligation respecting the relief invoked."

See, also, U. S. v. Stone, 2 Wall. 525, 17 L. Ed. 765.

In the present case it is very clear, as will appear later, that the state of California is without any remedy as a suitor in its own behalf. By Act Cong. March 3, 1853, c. 145, 10 Stat. 244, the proper authorities of the state of California were empowered to make selections of other lands in lieu of such portions of sections 16 and 36 as might have been settled upon previous to survey, agreeably to the act of Congress of May 20, 1826 (4 Stat. 179, c. 83), "and which," it is enacted, "shall be subject to approval by the Secretary of the Interior." Subsequent legislation followed, but it does not affect the question here. The bill of complaint shows that the state selected by indemnity selection No. 1,698, the land in dispute, with other land, "which said selection," the bill runs, "was considered and directed to be allowed by the Department of the Interior on the ninth day of June, 1896." Reference is made to volume 22, Land Dec. Dep. Int. 666, where it was determined by the honorable Secretary of the Interior, so far as it concerned this land, that "the application must be allowed." This, I take it, was not the approval of the Secretary of the Interior as required by the act of March 3, 1853, nor was it the equivalent thereof; but it was such an act as allowed, or, I might say, approved, the suit, on application of the state for the land. There needed subsequently the approval of the Secretary of the Interior and the listing to the state, which would

have constituted its title absolute, without the further necessity of deed or patent. To these further acts on the part of the government the state was entitled, unless, for good cause shown, the selection should have been in the meanwhile rejected by like authority; but no such action appears to have been taken. The state has done all it could to entitle it to the land and had proceeded to the extent that there had been segregation from the public domain, and thenceforth the land was not unappropriated land, and was not subject to homestead or preemption. U. S. v. Turner (C. C.) 54 Fed. 228; 17 Opinions Attorneys-General, 160.

Nor do I understand that the case of Roberts v. Gebhart, 104 Cal. 67, 37 Pac. 782, impinges upon this interpretation of the law. That was a case between private parties, and the Secretary of the Interior had taken action and refused to approve the selection, so the court said, speaking through Mr. Justice De Haven:

"Such a selection, when the Secretary of the Interior has acted upon and refused to approve it, does not confer even an equitable right upon the state, or upon one claiming under it, such as would authorize or justify a court of equity in reviewing the grounds or basis for such refusal. It is the consent of the United States, as manifested by the approval of the Secretary of the Interior, which gives legal efficacy to the application or selection made by the state, and without such approval neither the state nor its grantee is in a position to call in question any future disposition which the United States may make of the land embraced in the attempted selection."

So it appears that the state is not in a position to bring this suit in its own behalf, not having acquired such a right or title as gives it a standing in court; and hence it was that the government's interposition became necessary, it being a case "which personal litigation could not remedy"; thus affording one of the elements of jurisdiction specified in United States v. Missouri, etc., Ry., supra, and other cases cited in the same connection. The state can do nothing except through interposition of the department prior to the approval by the Secretary of the Interior, which is equivalent to a final grant of the title, yet, notwithstanding, when it has made its indemnity selection, which the law gives it the right to do, and when that selection or the application therefor has been allowed by a solemn adjudication of the Secretary of the Interior, it seems to me that the state has acquired an equity in the land of which it could not be divested by the susbequent entry thereof by a private individual, and that none of the proceedings subsequently had in the Land Department has had the effect to preclude or deprive it of that right. This furnished the state with an equity; and, being prior in time, is prior in right. The government had no right to permit the land to be entered as a homestead, unless, for good cause shown, it first rejected the selection or application of the state and set the land back again into the public domain. Thus far the government's right of suit seems complete.

It is contended, however, in behalf of the demurrers, under the showing of the bill, that the defendants, the alleged holders of the present title, are innocent purchasers. It will be observed that all the purchasers from Laam, whether directly or through mesne conveyances, save one, the Klamath Mill & Transportation Company, took title prior to the issuance of the patent. The last named took subse-

quent thereto. In this connection, it may be premised that it did not require a delivery of the patent to the claimant in order to pass the title. The title passed when the patent issued and was recorded in the record book kept for that purpose at Washington. This has been effectually determined by the case of United States v. Schurz, 102 U. S. 378, 397, 26 L. Ed. 167, 172. The court, speaking through Mr. Justice Miller, says:

"We are of opinion that when, upon the decision of the proper office that the citizen has become entitled to a patent for a portion of the public lands, such a patent made out in that office is signed by the President, sealed with the seal of the General Land Office, countersigned by the recorder of the Land Office, and duly recorded in the record book kept for that purpose, it becomes a solemn public act of the government of the United States, and needs no further delivery or other authentication to make it perfect and valid. In such case the title to the land conveyed passes by matter of record to the grantee, and the delivery which is required when a deed is made by a private individual is not necessary to give effect to the granting clause of the instrument."

See, also, Bicknell v. Comstock, 113 U. S. 149, 5 Sup. Ct. 399, 28 L. Ed. 962.

A purchaser prior to patent cannot claim to have purchased bona fide so as to entitle him to the protection of chancery. He must show that in his purchase and by the conveyances to him he acquired the legal title. Root v. Shields, 1 Woolw. 349, Fed. Cas. No. 12,038. This principle has been followed in the Department of the Interior. Travelers' Insurance Co., 9 Land Dec. Dep. Int. 316; Powers v. Courtney et al., 9 Land Dec. Dep. Int. 480; Richardson v. Moore, 10 Land Dec. Dep. Int. 415.

These considerations conclude the parties purchasing prior to the issuance of the patent, but not so as to the Klamath Mill & Transportation Company. "A patent being the highest evidence of title from the government, and presumptively valid, the purchaser from the patentee or those holding under him, is not required to go behind it, and to know that the previous steps to justify the making of it have been regularly taken." This was held in Schnee v. Schnee, 23 Wis. 377, 99 Am. Dec. 183. The court further observed that the doctrine contended for, namely, that the purchaser was required to take notice of the records and proceedings in the Land Department, would be true of different purchasers from the government of the same tract of land, which sometimes happens through mistake or otherwise, but not of remote purchasers after patent. The observation is particularly applicable here, and the state of California would be affected with notice from the records, but not the Klamath Mill & Transportation Company, which purchased after patent. I am of opinion that the bill of complaint does not show that the Klamath Mill & Transportation Company is not an innocent purchaser for value. The demurrer will, therefore, be sustained as to this company, but overruled as to Fine, and the demurrer of John H. and Elizabeth Laam will likewise be overruled.

Another point made in support of the demurrers is that the bill does not show that the government—it being apparent that the homestead was commuted to a pre-emption—has tendered back the purchase price

of the land to the holder of the title. I think, however, that this is not necessary where the government is suing that it may be enabled to grant the title to the party equitably and rightfully entitled to the conveyance from it. The case is the same as if the state of California had a standing in court and was suing to cancel the patent to Laam. The state in that case would not be required to tender to Laam the money paid to the government, so the government is not so required in the present case.

Let the order be entered as indicated in this opinion.