## UNITED STATES v. TURNER.[1]

### (Circuit Court, S. D. Alabama. December 27, 1892.)

1. PUBLIC LANDS—HOMESTEAD.
  A homestead entry operates as an appropriation of the land covered by it, and segregates this tract from the mass of the public domain.

2. SAME—TITLE OF HOMESTEADER.
  A homesteader has not the legal title before final proof, but has an immediate equitable interest and the exclusive right of possession until forfeited by failure to carry out the terms of entry.

3. SAME—POWER TO GRANT RIGHT OF WAY.
  A homesteader may, even before final proof, grant a right of way to a railroad, provided no damage is done under it to the freehold.

In Equity. On petition of the United States for rule against Noel E. Turner for contempt in violating an injunction against operating a railroad over government lands. Rule dismissed.

M. D. Wickersham, U. S. Dist. Atty.
McIntosh & Rich, for defendant.

TOULMIN, District Judge. The petition shows that on the 24th October, 1891, the complainants filed a bill in this court showing, among other things, that they possessed the title to and dominion over certain lands, which then were a part of the public domain of the United States, and described as the N. E. ¼ of the N. W. ¼, and S. E. ¼ of the N. W. ¼, section 15, township 3 N., range 4 W., in Washington county, Ala., and that the defendant, with others, had unlawfully cut timber upon said land, and made excavations and built ungainly embankments thereon, in the building and construction upon and over said land a "rail log road," and that complainants in said bill prayed that an injunction might issue to restrain the defendant from any further operation of the said railroad upon or through the said public land of the United States; and also that he might be compelled to remove his said road and material from said land. The petition further shows that on May 18, 1892, a final decree granting the injunction as prayed for was rendered by the court. The petition avers that subsequent to the rendition of said decree

[1] Reported by Peter J. Hamilton, Esq., of the Mobile, Ala., bar.

the defendant did take up and remove the rails of the said road from the land, but did not disturb the cross-ties, and further avers that shortly thereafter the defendant caused the said rails to be carried back to said land, and to be replaced in their original position, and has since continuously operated the same. On this petition notice was ordered to issue to the defendant to appear and show cause why he should not be committed for contempt for the act complained of, as a disregard and violation of the injunction.

The defendant now comes and files his answer to said petition, wherein he admits that all the averments of fact as contained in the petition are true, but says that subsequent to the rendition of the decree granting the injunction, and before he caused the said railroad to be relaid and re-established on said land, one James F. Logan duly entered the land as a homestead under the laws of the United States, went into possession thereof under such entry, was residing with his family thereon, and had made valuable improvements on the same; and that said Logan, under a contract made with him, granted him the right of way over the land, and permission to place his railroad thereon. The answer, with the affidavits as exhibits thereto, show that no damage has been done to the land by the placing of the said rails thereon, or the operation of the said railroad over the same.

It appears, then, that at the time the bill of complaint referred to was filed, and at the time the final decree thereon was rendered, the parcel of land in question was a part of the public domain; that subsequently it became the homestead of James F. Logan, and at the time the defendant replaced his railroad on the land it was the homestead of said James F. Logan, and was possessed and occupied by him as such. The homestead entry operated as an appropriation and reservation of the lands embraced in the same, and segregated the tract from the mass of the public domain. Wilcox v. Jackson, 13 Pet. 516; Witherspoon v. Duncan, 4 Wall. 218; Railroad Co. v. Johnson, (Kan.) 16 Pac. Rep. 129. The land, when homesteaded, ceased to be a part of the public domain. Its status had changed between the date of the decree granting the injunction and the time the rails were replaced on the land under the permission given by Logan, the homesteader. The principal point in controversy here is in respect to Logan's right to grant such permission. The petitioner, by its attorney, contends that because Logan holds under a homestead entry, and has not yet acquired the full legal title to the land, he had no authority to grant a right of way to defendant, and to permit him to build and operate his railroad thereon. I cannot agree with this contention. The homesteader has an interest in the land beyond the bare improvements placed thereon. It is true that he has not a legal title, and may never acquire it; but when he makes a bona fide settlement, and a valid entry of the land, he acquires an immediate interest to the entire tract, which gives him the right of possession. Railroad Co. v. Johnson, supra. The supreme court of Kansas in that case said "that the legislation of congress with respect to the interest acquired by the homestead settler contemplates not only that he owns the improvements, but

that he has an equity in the land itself, which he may transfer for a right of way. It further recognizes that, until this equity is obtained by purchase or otherwise, the right of a railroad company to enter and appropriate any portion of a homestead for a right of way is incomplete." The homestead entry gives the homesteader the exclusive right of possession, not only against individuals, but against the government. The opinion of the supreme court of Kansas, supra, which was concurred in by all the justices, fully sustains the opinion I hold on this subject. That court, in its opinion, quotes from an official opinion of Atty. Gen. MacVeagh, given in 1881, wherein he says:

"Upon entry the right in favor of the settler would seem to attach to the land, which is liable to be defeated only by failure on his part to comply with the requirements of the homestead law in regard to settlement and cultivation. This right amounts to an equitable interest in the land, subject to the further performance by the settler of certain conditions, (in the event of which he becomes invested with full and complete ownership;) and until forfeiture by failure to perform the conditions it must, I think, prevail, not only against individuals, but against the government. That, in contemplation of the homestead law, the settler acquires by his entry an immediate interest in the land, which, for the time being at least, thereby becomes severed from the public domain, appears from the language of section 2297, Rev. St., wherein it is provided that in certain contingencies the land so entered shall revert to the government." 1 Copp, Pub. Land Laws 1882, p. 388.

U. S. v. Ball, 31 Fed. Rep. 667; U. S. v. Freyberg, 32 Fed. Rep. 195.

If the homesteader has the exclusive possession of the land covered by his entry, if his right amounts to an equitable interest, which must prevail, not only against individuals, but against the government, it is clear to me that he has the right to grant any part of his possession and equitable interest to any other persons for their use and enjoyment so long as they do no damage to the freehold or contingent reversionary interest of the government. If the homesteader or the defendant (who occupies and uses a portion of the land under and by permission of the homesteader) should commit any waste, or do or attempt to do any permanent injury to the freehold, the government, holding the legal title, and having a contingent reversionary interest in the land, could enjoin and prohibit the same. This is the only interest and right the government has until the right of the settler is defeated by failure on his part to comply with the requirements of the law in such cases. The case of U. S. v. Railway Co., (which was a case in this court,)[2] is cited by the United States attorney to sustain his contention here. There was no decision by the court in that case touching the question involved in this. On a motion for a preliminary injunction, based on the bill, amendments, and exhibits, the circuit judges gave their individual opinions, in which they said that on the case as thus made an injunction pendente lite should issue to restrain the defendants from cutting timber or otherwise trespassing on the lands of the United States, whether homesteaded or not, for the location, building, and construction of their side and spur tracks. The bill

[2]No opinion filed.

averred that the defendants were cutting down and destroying timber, making excavations, and doing all manner of damage of an irreparable character to the land over which they were building their railroad spur and side tracks, and that in building the same they were going over homesteads against the objection and protest of the settler in some instances, and in others over homesteads the entries of which had been canceled, or were held for cancellation. In the case now before the court the facts shown by the pleadings and affidavits are that no damage is being done the freehold,—no injury of any kind to the property; that the land occupied and used is that of a valid homestead entry; and that it is so occupied and used with the consent of the homestead settler. So it will be observed that the opinion of the circuit judges referred to was based on an entirely different state of facts from that now presented to the court. My conclusion is that the rule should be dismissed, and the defendant discharged, and it is so ordered.