EUGENE W. KELSEY, *Plaintiff in Error,* v. LAKE CHILDS
COMPANY, A CORPORATION, *Defendant in Error.*

. En Banc.

Opinion Filed April 5, 1927.

Petition for Rehearing Denied May 10, 1927.

SYLLABUS.

1. Rights which have been acquired under actual Government
survey cannot be affected or interfered with by a subsequent
survey; but until some rights to a specific tract of land
have been acquired under a survey, a corrected survey can
be made and substituted therefor.

2. Original actual surveys of public lands by the United States
Government, on the faith of which property rights have been
acquired, control over surveys subsequently made by the
Government which affect such rights.

3. The survey actually made by the United States Government
and according to which it sold the land, controls as between
parties to an action of ejectment covering such land.

4. After public lands have been entered at the land office and
a certificate of entry obtained, they are in a sense private
property, the Government agreeing to make a conveyance as
soon as it can, and in the meantime holding the naked legal
fee in trust for the purchaser, who has the equitable title.

5. From the making of his entry the homesteader has the right
of possession as against trespassers and all others except
the United States; he has also an inchoate title, subject to
be defeated only by failure on his part to comply with the
requirements of the homestead law as to settlement and
cultivation. So long as he complies with these laws in the
course of earning a complete right to the lands as against
the Government, he has a substantial inceptive title, suf-

ficient as against third parties to support suits in equity or at law.

6. The receipt of the land office for entry fee is *prima facie* evidence of a homestead entry.

7. The homestead entry operates as such an appropriation of land covered by it and so far segregates the tract entered from the public domain, as to enable the entryman to protect his interest therein as against parties other than the United States Government.

8. The qualified entryman who enters public lands with the intent to acquire title has a vested right as against third parties of which he can only be deprived by failure to comply with the law.

9. Although title does not pass from the United States to a homestead entryman until the issuance of a patent, the receiver's receipt issued to an entryman in possession and claiming land under Rev. Stat. U. S. 2990, constitutes sufficient title to enable him, as to parties other than the Government, to maintain or defend a suit concerning the land.

STRUM, J., Concurring.

1. The defendant in an action of ejectment may interpose a defense upon equitable grounds.

2. When a homestead entryman has made a lawful entry upon public lands, and has obtained a certificate of entry, and is not in default in his compliance with the requirements of the law under which he entered, even though he has not completed all his payments, such lands are no longer subject to entry or settlement by another. As against all except the United States, such entryman is the lawful possessor of the lands he entered and is clothed with an inceptive title which entitles him to maintain suits in equity or actions at law to obtain redress for a violation of his possessory rights.

3. In action of ejectment brought by a *private individual*, the inchoate equitable rights acquired by another under a lawful and subsisting entry will be protected against a patent issued in violation of the rights of such entryman, when the rights of the entryman are such that he is entitled to attack the patent.

4. When an entry of public lands is made in good faith and in reliance upon an actual Government survey, the patent, when issued, relates back to the date of the entry and refers to the lines actually run on the ground according to the survey under which the entry was made.

5. The survey actually made by the United States Government, according to which it sold the land, controls as between parties to an action in ejectment involving such land.

6. In ejectment, an equitable estoppel may be proven under the general issue.

A Writ of Error to the Circuit Court for Highlands County; George W. Whitehurst, Judge.

Judgment reversed.

*W. D. Bell,* for Plaintiff in Error;

*Treadwell & Treadwell,* for Defendant in Error.

BROWN, J.—Rights which have been acquired under government survey cannot be affected or interfered with by a subsequent survey; but until some rights to a specific tract of land have been acquired under a survey, a corrected survey can be made and substituted therefor. 32 Cyc. 805; *In re* Scott (Cal.), 156 Pac. 872; Cragin v. Powell, 128 U. S. 691, 32 L. Ed. 566; Hickman v. Jones, 183 N. W. 980; U. S. v. State Investment Co., 264 U. S. 206, 68 L. Ed. 639.

Original actual surveys of public lands by the United

States government, on the faith of which property rights have been acquired, control over surveys subsequently made by the government which affect such rights. 22 R. C. L. 282, and cases cited; Pittsmont Copper Co. v. Vanina (Mont.), 227 Pac. 46; Groover v. Coffee, 19 Fla. 61; Coffee v. Groover, 20 Fla. 64; Lidden v. Hodnett, 22 Fla. 442.

The survey actually made by the United States government and according to which it sold the land, controls as between parties to an action of ejectment covering such land. Miller v. White, 23 Fla. 301, 2 So. 614.

After public lands have been entered at the land office and a certificate of entry obtained, they are private property, the government agreeing to make a conveyance as soon as it can, and in the meantime holding the naked legal fee in trust for the purchaser, who has the equitable title. Wisconsin C. R. Co. v. Price Country, 133 U. S. 496, 33 L. Ed. 687; Kansas P. Ry. Co. v. Prescott, 83 U. S. (16 Wall.) 603; 21 L. Ed. 373; Kansas, etc., Ry. Co. v. Dunmeyer, 113 U. S. 629, 28 L. Ed. 1122; Brandon v. Ard., 211 U. S. 11, 53 L. Ed. 68; Hagan v. Ellis, 39 Fla. 463, 22 So. 726; Doran v. Kennedy, 237 U. S. 362, 59 L. Ed. 996; Cornelius v. Kessel, 128 U. S. 456, 32 L. Ed. 482; Payne v. New Mexico, 255 U. S. 367, 65 L. Ed. 680.

"From the making of his entry the homesteader has the right of possession as against trespassers and all others except the United States; he has also an inchoate title, subject to be defeated only by failure on his part to comply with the requirements of the homestead law as to settlement and cultivation. So long as he complies with these laws in the course of earning a complete right to the lands as against the government he has a substantial inceptive title sufficient as against third parties to support suits in equity or at law.* * *

"The homesteader has a preferential right to the land,

and in order to give effect to this according to the spirit of the laws it must be and is held that when he has fulfilled the conditions imposed upon him, and receives a patent vesting in him the complete legal title this title relates back to the date of the initiatory act, so as to cut off intervening claimants.'' Knapp v. Alexander Edgar Lumber Co., 237 U. S. 162, 59 L. Ed. 894; U. S. v. Buchanan, 232 U. S. 72, 58 L. Ed. 511; Brandon v. Ard, *supra;* Osborn v. Froyseth, 216 U. S. 571, 54 L. Ed. 619; Wadkins v. Producers' Oil Co. (La.), 57 So. 937; Burlington, etc., R. R. Co. v. Johnson, 38 Kan. 142, 16 Pac. 125; Poole v. Baker (Wyo.), 154 Pac. 328; U. S. v. Turner, 54 Fed. 228; 5 U. S. Compiled Statutes, pp. 5339, *et seq.;* Whitney v. Taylor, 158 U. S. 85; 39 L. Ed. 906.

The receipt of the land office for entry fee is *prima facie* evidence of a homestead entry.   Whittaker v. Pendola, 78 Cal. 296, 20 Pac. 680.

The entry operates as an appropriation of the land covered by it and segregates the tract entered from the public domain, Hastings and Dakota R. Co. v. Whitney, 132 U. S. 357, 33 L. Ed. 363; Sturr v. Beck, 133 U. S. 541, 33 L. Ed. 761; U. S. v. Bagnell Timber Co., 178 Fed. 795.   See also the case cited in McDaniel v. McElvey, 108 So. 820, text 830, beginning with the case of Witherspoon v. Duncan, 4 Wall. (U. S.) 210, 18 L. Ed. 339.

The qualified entryman who enters public lands with the intent to acquire title has a vested right of which he can only be deprived by failure to comply with the law.   Daniels v. Wagner, 194 Fed. 973, 205 Fed. 235, 125 C. C. A. 93.

Although title does not pass from the United States to a homestead entryman until the issuance of a patent, the receiver's receipt issued to an entryman in possession and claiming land under Rev. Stat. U. S. 2990, constitutes suf-

ficient title to enable him to maintain or defend a suit concerning the land.

This was an ejectment suit. To the declaration, the defendant, plaintiff in error here, interposed two pleas, the plea of not guilty, and a plea disclaiming possession of the land sued for. The plaintiff claimed title under a deed from Geo. W. Westervelt, and government patent to Westervelt dated August 24, 1915, and introduced evidence tending to show that, under the field notes of a resurvey (approved by the Department of the Interior on July 31, 1919, and authorized or confirmed by an Act of Congress, received by the President October 20, 1919, and which became a law without his approval), the land involved in the suit and covered by said patent was in the possession of the defendant. Plaintiff also offered in evidence a certified copy from the Department of the Interior of a petition signed by the defendant and many others requesting a resurvey and relocation or retracement of township, range and section lines in several townships, one of which embraced the land in question.

The Act of Congress above referred to authorized the Secretary of the Interior to equitably adjust disputes and claims by entrymen, patentees, etc., of the United States against the United States and between each other, arising from faulty surveys in said townships, and recites that ''the said surveys having been shown to have been faulty by the resurvey of certain lands in said townships.'' The Act further authorized the Secretary of the Interior to make such surveys or resurveys in said townships as may in his judgment be necessary in order to carry out the provisions of this Act.

It will be noted that the resurvey under which plaintiff claimed was made before the above Act was adopted; but even if this Act should be construed as a confirmation of

such resurvey, which is not at all clear, it could not impair property rights which had vested under the prior government survey or surveys, pursuant to which the patent was issued to Westervelt in 1915, or any homestead entries, such as the defendant's, made prior to such resurvey, under the principles above set forth.

A consideration of the propositions established by the authorities referred to in the beginning of this opinion shows that the Court below erred in refusing to permit the defendant to introduce evidence tending to show that under original government surveys of 1850 and 1870, the patent necessarily based upon these surveys, and the deed to plaintiff by the patentee, did not embrace the lands of which the defendant was in possession, and which were located in an adjoining quarter-section. It follows also that the Court below erred in refusing to permit the defendant to introduce in evidence his receipt for homestead entry fees, showing his entry in 1913, of a quarter-section adjoining that embraced in plaintiff's deed and the Westervelt patent, and that the land he was in possession of was according to prior government surveys within the quarter-section covered by his entry; and in refusing to admit his testimony showing that he entered into possession thereof under such entry and built a home and cleared and cultivated, improved and fenced, a portion of the quarter-section entered and had resided thereon; also, in refusing to permit him to show that he had proved up his entry and secured a final certificate in 1920. As the Court had refused to permit the defendant to introduce the government field notes of the original government survey and to introduce evidence tending to show that according to such survey the plaintiff's patent and deed did not embrace the land in question, but was embraced in his homestead entry, the defendant endeavored to make out a defense by adverse possession of such lands,

whereupon the Court required the defendant to elect between his pleas, and the defendant elected to proceed under the plea of the general issue. As the Court's requirement was based upon the erroneous holding by the Court that the resurvey of 1919 was conclusive upon the defendant, and that he could not show any right attaching under prior surveys in force at the time he made his homestead entry, it follows that such requirement of the defendant to elect between his pleas was also erroneous.

If the signing by Kelsey of the petition for resurvey could be construed to constitute an estoppel against him to insist upon rights vested under the prior government surveys, which is extremely doubtful in view of the language of such petition, the question as to whether Kelsey was in any manner bound by such petition became a question of fact in view of his testimony that such petition had been altered after he signed it, without his knowledge or consent.

There was an instructed verdict for the plaintiff, and judgment entered thereon in its favor, to which defendant took writ of error. For the reasons above pointed out, such judgment must be reversed and the cause remanded to the Court below for another trial.

Reversed.

WHITFIELD, TERRELL, STRUM AND BUFORD, J. J., concur.

ELLIS, C. J., dissents.

ELLIS, C. J., dissenting:

This was an action of ejectment. Actions of ejectment are founded upon the legal title. A patentee from the United States Government of lands described in the patent holds the legal title to such lands and one who contests the

title of the patentee in a court of law must show a superior legal title. Henshaw v. Bissell, 18 Wall. (U. S.) 255, 21 L. Ed. 835.

The holder of a certificate of a homestead entry in possession of the land cannot defend against an action of ejectment brought by the grantee in fee of the United States, whether the plaintiff's patent was issued before or after the issuance of the certificate. Lowery v. Baker, 141 Ala. 600, 37 South. Rep. 637.

Until an entryman has become entitled to a patent he has no vested rights in the land as against the United States such as will deprive Congress of the power to dispose of the land otherwise than by a patent to him. Lovell v. Wall, 31 Fla. 73, 12 South. Rep. 659; Hagan v. Ellis, 39 Fla. 463, 22 South. Rep. 727.

The entryman acquires only an equitable interest, but such an interest is not a defense against the legal title. My conclusion is that Kelsey could not interpose as a defense in ejectment his equitable interests acquired under his entry upon the land against the holder of the legal title under a patent from the United States.

STRUM, J., concurring:

The defendant tendered a defense upon equitable grounds. See McGill v. Dartist, 69 Fla. 587; 68 South. Rep. 755. He endeavored, but was not permitted, to show that he was a lawful homestead entryman upon and the owner of an equitable inceptive title to certain described lands; that he entered under and according to an existing government survey made in 1870; and that he ,the defendant, was in privity with the United States under a paramount claim of title to the lands of which he was in possession. The record disclosed no claim by the plaintiff that the lands

entered by defendant were not subject to lawful entry, or that the defendant was a mere trespasser thereon. Plaintiff claims the lands in question by virtue of a change in boundaries resulting from a subsequent survey, made pursuant to an Act of Congress, and which became effective in 1919. The latter survey was made subsequently both to defendant's entry of the lands claimed by him and to the issuance of the patent to plaintiff's predecessor in title. The defendant's entry receipt and the patent of plaintiff's predecessor in title each describe distinct and different, but contiguous parcels of land. The question presented seems to be whether the survey of 1870 or the survey of 1919 shall prevail between these parties. The boundaries of the lands described in defendant's entry receipt and in the patent of plaintiff's predecessor in title, as fixed by the survey of 1919, differ from the boundaries previously fixed by the survey of 1870. It appears that if the survey of 1919 prevails, the physical lands of which the defendant is in possession will be embraced within the description patented to plaintiff's predecessor, while the lands described in the entry receipt of the defendant would be elsewhere. If the survey of 1870, under which the defendant entered and under which the plaintiff's rights initially arose, is to prevail, the defendant is apparently in possession of the physical lands described in his entry receipt, while that patented to plaintiff's predecessor lies elsewhere. Thus it will be seen that the controversy between the parties is essentially one of location, or boundaries, rather than of legal title. The paper title of each party appears to be regular.

It is settled that the defendant in an action of ejectment may interpose a defense upon equitable grounds. Osceola Fert. Co. v. Beville, 86 Fla. 479; 98 South. Rep. 354. It is true that until an entryman has become entitled to a patent he has no vested right in the land *as against the United*

*States* such as will deprive Congress of the power to dispose of the land otherwise than by a patent to him.  32 Cyc. 819. See also:  Lovell v. Wall, 31 Fla. 73; 12 South. Rep. 659; Hagan v. Ellis, 39 Fla. 463; 22 South. Rep. 727.  But the principle just stated is not applicable to this case.  The defendant entryman originally entered the lands described in his entry receipt in 1913.  In 1915 the United States patented to plaintiff's predecessor certain described lands. Defendant's entry was made and the patent of plaintiff's predecessor was issued while the survey of 1870 was in effect, and prior to the survey of 1919.  According to the survey of 1870, the lands entered by the defendant and the lands patented to plaintiff's predecessor were separate and distinct, but contiguous, tracts.  It is due to the change in boundaries resulting from the survey of 1919 that plaintiff now claims a part of the lands actually occupied by the defendant under his original entry.  But long prior to the survey of 1919 the United States had divested itself of all title to the lands described in the patent through which plaintiff claims by patenting the same to plaintiff's predecessor while the survey of 1870 was unquestionably effective. Thus it will be seen that the attempted change in boundaries wrought by the survey of 1919 produces a controversy wholly between private individuals, the title patented to plaintiff's predecessor by the United States being predicated upon the former survey of 1870.  When a homestead entryman has made a lawful entry upon public lands, and has obtained a certificate of entry, and is not in default in his compliance with the requirements of the law under which he entered, even though he has not completed all his payments, such lands are no longer subject to entry or settlement by another. As against all except the United States, such entryman is the lawful possessor of the lands he entered and is clothed with an inceptive title which entitles

him to maintain suits in equity or actions at law to obtain
redress for a violation of his possessory rights. United
States v. Buchanan, 232, U. S. 72; 58 Law. Ed. 511. In an
action of ejectment brought by a private individual—as in
this case by a grantee of a patentee of public lands—the
inchoate equitable rights acquired by another under a law-
ful and subsisting entry will be protected against a patent
issued in violation of the rights of such entryman, when the
rights of the entryman are such that he is entitled to attack
the patent. Knapp v. Alexander Co., 237 U. S. 162; 59
Law. Ed. 894; Johnson v. Drew, 34 Fla. 130; 15 South. Rep.
780; aff. 171 U. S. 93; 45 Law. Ed. 88; Doolan v. Carr, 125
U. S. 618; 31 Law. Ed. 844; Davis v. Weibold, 139 U. S.
507; 35 Law. Ed. 238; and see the note to Whitehill v. Vic-
torio Land & Cattle Co. (139 Pac. Rep. 184), L. R. A.
1918-D, 593, 505.

When an entry of public lands is made in good faith and
in reliance upon an actual government survey, the patent,
when issued, relates back to date of the entry (Knapp v.
Alexander Co., 237 U. S. 162; 59 Law Ed. 894) and refers
to the lines actually run on the ground according to the sur-
vey under which the entry was made. Washington Rock
Co. v. Young, 88 Pac. Rep. 382; 110 Am. State Rep. 666,
and notes. The survey actually made by the United States
Government, and according to which it sold the land, con-
trols as between parties to an action in ejectment involving
such land. Miller v. White, 23 Fla. 301, 2 South. Rep. 614;
Watrous v. Morrison, 33 Fla. 261; 14 South. Rep. 805;
Washington Rock Co. v. Young, *supra*.

Since the defendant, in ejectment or other action at law,
may set up by equitable plea any facts which would entitle
him to relief on equitable grounds against the judgment
obtained by the plaintiff (Sec. 2635, Rev. Gen. Stats. 1920),
it is unnecessary to determine whether the facts asserted by

the defendants in this cause, if true, would render the patent of plaintiff's predecessor void (in so far as it purports to affect the lands in controversy) and therefore subject to collateral attack, or merely voidable and therefore amenable only to direct attack in equity. See Doolan v. Carr, *supra;* Johnson v. Drew, *supra.*

In ejectment, an equitable estoppel may be proven under the general issue, McGill v. Dartist, 69 Fla. 587; 68 South. Rep. 755; Blackiston v. Smith, 73 Fla. 25; 73 South. Rep. 839; Coram v. Palmer, 63 Fla. 116; 58 South. Rep. 721; Hagan v. Ellis, 39 Fla. 463; 22 South. Rep. 727; Johnson v. Drew, *supra;* and see also the notes to Chilton v. 85 Mining Co. (168 Pac. Rep. 1066), L. R. A. 1918-F, 243, 257; and the notes to Knauf Tesch Co. v. Elkhart, etc., Co. (141 N. W. Rep. 701), 48 L. R. A. (N. S.) 744, 759, and the notes to Kenney v. McKenzie (120 N. W. Rep. 781; 127 N. W. Rep. 587); 49 L. R. A. 775, 778.

It is unnecessary, however, to consider whether the defendant was entitled to introduce his proffered evidence under the general issue as an equitable estoppel, or whether his equitable defense was of such a nature that it should have been specially pleaded, since the plaintiff did not object to the evidence on the ground that it presented a defense not pleaded.

WHITFIELD, TERRELL AND BROWN, J. J., concur.