WIGGINTON, Judge.
Plaintiffs have appealed from a summary judgment in favor of defendants. It is contended that the trial judge erred in his rulings of law incorporated in the pre-trial conference order which formed the basis of the summary judgment.
Plaintiffs sued in ejectment claiming ownership and right to possession of a described parcel of land lying West of Juniper Creek in Lot 7 of fractional Section 1, Township 1 S, Range 23 West. In their answer to the complaint defendants deny that the parcel of land claimed by plaintiffs lies in Lot 7, but allege that the parcel lies wholly within Lot 6 of fractional Section 1, Township 1 South, Range 23 West, owned by them. By an amendment to their answer defendants also claim title to the disputed land by adverse possession under color of title.
At a pre-trial conference held before the court the parties exhibited a certified copy of the original plat of Township 1 South, Range 23 West made by the United States Government in 1826, together with a certified copy of the field notes of the original survey from which the official plat was made and adopted. An .examination of this plat reveals that no part of Lot 7 lies west of Juniper Creek as delineated thereon. Both plaintiffs’ and defendants’ deraignment of title establish that the patents granted by the United States to government Lots 6 and 7 in fractional Section 1 were issued prior to 1932. There was also exhibited to the trial court a certified copy of a plat made pursuant to a dependent resurvey of fractional Section 1, Township 1 South, Range 23 West, made by the United States Government in 1932, together with a certified copy of the field notes of the dependent resurvey from which the 1932 map was prepared and adopted. An examination of this plat reveals that due to an apparent eastward shifting of Juniper Creek’s southerly course since the date of the original survey a portion of Lot 7 now lies westerly of the creek, east of Lot 6 and easterly of the eastern meander line of Boggy Bayou as originally surveyed and delineated on the 1826 plat. This plat further indicates that Boggy Bayou, which originally constituted a portion of the north-south boundary between Lots 6 and 7 into which Juniper Creek has always- flowed, has apparently receded southeastward leaving the body of dry land now claimed in part by plaintiffs and alleged to lie within Lot 7. Whether such appearance is a fact remains an issue to be resolved at the trial.
*60 For clarity of explanation we reproduce the original survey of 1826, and from the below a sketch of the plats made from both dependent resurvey of 1932.

*61 Upon consideration of the original Government plat and related field notes of fractional Section 1, and the dependent resurvey of the same section made by the Government in 1932, the trial judge ruled that the plat of the dependent resurvey of 1932, and the field notes from which it was prepared, were not competent evidence for any purpose at the trial and were, therefore, inadmissible as evidence to prove any issues in the case.
The result of this ruling was to preclude plaintiffs from utilizing the proof on which it would be forced to rely in order to prove that the parcel of land claimed by them and described in their complaint lies in Lot 7, and not in Lot 6 owned by defendants. By virtue of this ruling defendants filed their motion for summary judgment contending there was no genuine issue of any material fact, and that they were entitled to judgment as a matter of law. Defendants’ motion was granted and summary judgment in their favor was entered.
By this appeal we are called upon to determine whether the trial judge erred in ruling that the plat of the dependent resurvey of 1932 made by the United States covering the section of land here under consideration, together with the field notes from which the plat was made, are inadmissible as proof of the issues made by the pleadings.
A government dependent resurvey has been defined as follows :
“When the retracement show that the principal resurvey problem is one of obliteration, with comparative absence of large discrepancies, i. e. — that the early survey had been made faithfully, then that official survey can be reconstructed or restored as it was in the beginning; the methods applied are termed a ‘dependent resurvey.’
* * * * # *
“The dependent resurvey is designed to accomplish a restoration of what purports to be the original conditions according to the record, based, first, upon identified existing corners of the original survey and other recognized and acceptable points of control, and, second, upon the restoration of missing corners by proportionate measurement in harmony with the record of the original survey. This scope of resurvey is applicable to those cases showing fairly concordant situations between conditions on the ground and the record of the original survey. Title, areas, and descriptions should remain absolutely unchanged in the typical dependent resurvey.” [1]
In the Akin case our Supreme Court held that:
“In making a resurvey, the question is not where an entirely accurate survey would locate the lines, but where did the original survey locate such lines. * * * As stated in 8 Am.Jur., Boundaries, Section 102, page 819: ‘The object of a resurvey is to furnish proof of the location of the lost lines or monuments, not to dispute the correctness of or to control the original survey. The original survey in all cases must, whenever possible, be retraced, since it cannot be disregarded or needlessly altered after property rights have been acquired in reliance upon it.’ It is generally held, therefore, that a resurvey that changes lines and distances and purports to correct inaccuracies or mistakes in an old plat is not competent evidence of the true line fixed by the original plat.” [2]
The field notes of the 1932 dependent resurvey contain the following statements:
“The following field notes are those of a dependent resurvey, or reestablishment, of the east, west and south *62 boundaries, and the subdivisional lines of the township and meanders therein.
“The resurvey is a complete restoration of the original boundaries and sub-divisional lines, in their true original positions as adjusted to identified evidence. * * *
“Before reconstructing or restoring the corners, a retracement and search was made for the evidence of the original corner posts and bearing trees, and other calls of the field note record. When duly identified or restored, the corner positions were remonumented and new bearing trees marked.
s}: s}« í{í íJí
“The resulting true lines were then run and marked through the timber, and all lost or obliterated corners were reestablished in their true original positions as determined by adjustment to the accepted corners.”
The memorandum appearing on the plat of the dependent resurvey states:
“This plat of the resurvey of Township 1 South, Range 23 West, delineates a retracement and reestablishment of the lines of the original survey as shown upon the plat approved February, 1827, in their true original positions according to the best available evidence of the position of the original comers. * * ”
From the foregoing recitals contained in the field notes and on the plat of the 1932 resurvey there affirmatively appears without ■contradiction that the resurvey merely reestablished the boundaries of the original ■survey made in 1826, and does not purport in any manner to correct inaccuracies or mistakes in such original survey. This is true despite the fact that the plat of the resurvey reveals that since 1826 the southerly course of Juniper Creek has apparently shifted eastward into Lot 7, and the northern reaches of Boggy Bayou have receded in a southeasterly direction leaving a body of dry land formerly covered by the bayou as meandered at the time of the original survey.
Defendants contend that the United States Government conveyed title to Lots 6 and 7 in accordance with the original survey as shown by the 1826 plat. They emphasize that Juniper Creek is delineated on the original plat which affirmatively establishes that no part of Lot 7 lies westerly thereof or westerly of Boggy Bayou which formed a natural boundary between the southern portion of the two lots. Because of this contention we are urged to apply to the facts in this case the principle announced by this court in the Mexico Beach Corporation decision where we held that “[wjhen lands described in a deed are by reference to or in accordance with a plat or survey, the courses, distances, and other particulars appearing on the plat are to be as much regarded as if expressly set forth in the deed itself.” [3] We point out, however, that the courses, distances and other particulars appearing on a plat as referred to in that decision are those which may be supported by the field notes from which the plat was made, or represent the interior boundaries fixed by the draftsmen of the plat from accurate and reliable information furnished him by the surveyor. The inapplicability of this principle to the appearance of Juniper Creek on the 1826 plat will more fully appear in our subsequent discussion of the case.
It is defendants’ position that the purpose and effect of the dependent resurvey of 1932 is to show an easterly shift in the southerly course of Juniper Creek and a southwesterly recession of Boggy Bayou thereby changing the boundary line between Lots 6 and 7 as originally surveyed and platted. It is argued the effect of such an attempted change in boundary would be to create a body of land lying within Lot 7 which is not shown to be contained therein by the 1826 survey *63 and plat. Defendants support the trial court’s ruling excluding from evidence the 1932 resurvey by the well established principle of law that actual surveys of public lands by the United States government, on the faith of which property rights have been acquired, control over surveys subsequently made by the government which affect such rights.[4] In the Bishop case this court held that “a resurvey that purports to change lines or distances or to otherwise correct inaccuracies and mistakes in an old plat is not competent evidence of the true line fixed by the original plat.” [5]
We agree with the foregoing principles of law to the effect that a subsequent resurvey is inadmissible if it purports to alter or correct boundaries as fixed in the original survey as shown on the original government plat. Defendants’ argument would have validity and be supported by the foregoing principles if it appeared from the evidence in this record that Juniper Creek, as shown on the original government plat of 1826, was in fact the boundary line between Lots 6 and 7. In order for the creek to constitute the boundary between the lots in question it would have been necessary for it to have been surveyed and the line of the creek meandered. In the Calder case the Second District Court of Appeal quoted with approval from the decision in Rue v. Oregon & Washington R. Co., 109 Wash. 436, 186 P. 1074, 1077, as follows:
“By the United States government system of surveys, a meander line is run when a water course or other body of water is the external boundary of the adjacent land. The line showing the place of the water course or other body of water and its course, sinuousities, and distance, is called a ‘meander line.’ ” [6]
The field notes of the original survey from which the 1826 plat was made clearly reveal that although Boggy Bayou was surveyed! and meandered, Juniper Creek was not. Standard government survey practices and procedure places the responsibility of designating the interior lot lines of fractional sections on the draftsmen in the government land office to which reports and notes are-sent, and not by the surveyor who did the-field work.[7] Since Juniper Creek was neither surveyed nor meandered in the 1826-survey, its appearance on the original plat merely represents a topographical feature of the section outlined by the draftsmen in the office according to information furnished by the surveyor, and cannot be construed as the-boundary line between Lots 6 and 7 according to the original survey. The original' survey, and the plat constructed therefrom,, not only ascertained and identified the-boundary line between Lots 6 and 7, but actually created the lots themselves.[8] The original plat created the north-south boundary between Lots 6 and 7 along a line running from the mid-point of the mid-section-line south to the northern shore of Boggy Bayou, which bayou formed the natural' boundary between the two lots southerly to-the south line of the section.
Reverting to the 1826 plat hereinabove-reproduced it is palpably clear that had' Juniper Creek been intended as the boundary between Lots 6 and 7, the creek would have been surveyed and the north-south-dividing line between the two lots would' have terminated at the creek, rather than projected through the creek and made to-terminate at the northern meander line of Boggy Bayou as shown on the original plat. Furthermore, had Juniper Creek been intended as a boundary between the two lots in-question, the small triangle of land lying *64 northeasterly of the creek in the southwest quarter of the section would be a part of Lot 7. The interior north-south line dividing Lots 6 and 7 clearly shows, however, that this triangle of land is contained wholly within Lot 6.
Defendants additionally contend that if Juniper Creek has during the past one hundred years shifted its southerly course easterly into Lot 7 as shown on the 1932 resurvey plat, all of the land lying west of the creek would attach to Lot 6 under the law of accretion. The rule on which defendants rely is summarized by Clark as follows:
“In those cases where a water-line is a boundary of a tract of land, that waterline remains the boundary no matter how it changes by accretion, and a deed describing the land as a certain lot by number conveys the land up to the ever changing line of the stream or lake. The water-line continues the boundary line and the deed carries the accretion.” [9] (Emphasis supplied.)
This principle was recognized as the law of Florida in the Ford case where the Second District Court of Appeal, speaking through Judge White, said:
“Generally the margin or bed of a stream, or other body of water constituting a boundary, continues to be the boundary notwithstanding any accretion or erosion which changes the location of the body of water. The boundary lines of land so located thus extends or restricts as that margin gradually changes or shifts by reason of accretion or erosion.” [10] (Emphasis supplied.)
If the premise on which defendants’ position is based is sound, then under the above quoted principles of law the land lying west of Juniper Creek as presently located and shown on the dependent resurvey of 1932 would by accretion become attached to and form a part of Lot 6 owned by defendant. The premise on which this reasoning is based is untenable and cannot be sustained for the reason that Juniper Creek was never intended to be nor is it in fact the boundary line between Lots 6 and 7 as originally surveyed and shown on the 1826 Government plat.
For the reasons hereinabove stated we are of the view that the dependent resurvey of 1932, and the field notes from which the plat was prepared, are admissible in evidence for the purpose of proving the issues in this case. The trial judge erred when he ruled to the contrary, and the summary judgment predicated upon such erroneous ruling is reversed and set aside.
It is our view and we so hold that the location of Juniper Creek as it appears on either the original plat of 1826, or the dependent resurvey plat of 1932, is not determinative of the boundary line between Lots 6 and 7 involved in this suit. The principal problem posed for decision involves the establishment of the boundary between the two lots in question from the point where the north-south dividing line intersected the northern shore of Boggy Bayou as it was originally located in the field notes and shown on the 1826 plat, and the shore of Boggy Bayou as presently located according to the field notes of the 1932 dependent resurvey and shown on the 1932 plat. Once such boundary line is established by competent evidence in accordance with established principles of law, the question of whether the parcel of land claimed by plaintiffs actually lies in Lot 7 as alleged by them, or in Lot 6 as alleged by defendants, may readily be resolved upon evidence adduced by the parties.
Since this case must be returned to the trial court for further proceedings and possibly for trial, it is deemed necessary that we pass upon one remaining point presented by this appeal. In his pre-trial conference order the trial judge ruled that each side to *65 this cause would be entitled to six peremptory challenges at the trial. This ruling is assigned as error.
The plaintiffs are the sole surviving heirs of their predecessor who is alleged to be record owner of the property described in the complaint. The defendants are the grantees in a deed that covers a portion of the property which forms the subject matter of this litigation. It therefore affirmatively appears that the interest of those constituting the plaintiffs in the cause are identical and common. The same is true of those parties constituting the defendants herein. No party on the same side of the action appears to have an interest that is hostile or antagonistic to his co-parties. Under these circumstances each side is entitled to only three peremptory challenges.[11] The trial court’s order allowing six peremptory challenges to each side is erroneous and is therefore reversed.
Reversed and remanded for further proceedings.
CARROLL, DONALD, K., C. J., and RAWLS, J., concur.

. Clark on Surveying and Boundaries, 3rd Ed., § 163.

. Akin v. Godwin (Fla.1950), 49 So.2d 604, 607.

. Mexico Beach Corporation, v. St. Joe Paper Company (Fla.App.1957), 97 So.2d 708, 711.

. Kelsey v. Labe Childs Co., 93 Fla. 743, 112 So. 887.

. Bishop v. Johnson (Fla.App.1958), 100 So.2d 817.

. Calder v. Hillsboro Land Company (Fla.App.1960), 122 So.2d 445.

. Clark on Surveying and Boundaries, 3rd Ed., § 196.

. Bishop v. Johnson (Fla.App.1958), 100-So.2d 817, 819.

. Clark on Surveying and Boundaries, 3rd Ed., § 99.

. Ford v. Turner (Fla.App.1962), 142 So. 2d 335.

. Utilities Service, Inc. v. Replogle (Fla.App.1959), 110 So.2d 438.