JOHNSON, Judge.
This is an appeal from a final decree of the Circuit Court of Okaloosa County, Florida, Thomas D. Beasley, J., adverse to the appellant.
The appellee, who was the plaintiff below, brought suit against the appellant, as defendant below, claiming that the appellant was occupying illegally and claiming a strip of land approximately 60 feet in width across the E of NE J4 of NE j4 of Section 34, Township 1 South, Range 24 *246 West, which belonged to the appellee-plaintiff. The plaintiff claimed ownership to said property under a deed to her husband in December 1915, which described the land as being in Section 34.
The appellant claimed ownership of said property by virtue of his deed obtained in 1930, which deed described the land as being in Section 27, Township 1 South, Range 24 West.
The question then is where is the correct section line between Sections 27 and 34, Township 1 South, Range 24 West?
The plaintiff claims that the United States Government made a resurvey of the section lines in 1937 and that as a result of said survey, the Northern section line of Section 34, being also the Northern line of plaintiff’s land, encompassed the disputed 60 foot strip.
The appellant-defendant testified that he had been familiar with the section lines between Sections 27 and 34 for many years. That about 1920 a survey was made as to the adjacent Section 26, in order to locate a borrow pit for county road purposes, and that the Southern boundary of the borrow pit was the same as the Southern boundary line of Section 26, Township 1 South, Range 24 West. Also, that there was an old fence line built prior to 1920 which was on the section line dividing Sections 27 and 34, Township 1 South, Range 24 West and that said fence line can still be traced, as well as the borrow pit and that the fence line and Southern boundary of the borrow pit are in line. Appellant also testified that these latter lines were fixed by the United States Survey of about 1800 and that he had procured a survey to be made of Section 34 by a licensed surveyor about 1926, and that under such survey, the lines claimed by the appellant corresponded exactly with this latter survey and with the 1800 Government survey.
Appellant also testified, which was not contradicted, that he had planted some trees as far back as 1932, in the disputed area and that the appellee had never questioned his property line until a Government re-survey was made in 1937, which established the section lines approximately 60 feet North of the old survey lines. Appellant therefore claimed that the latter survey was wrong and appellee claimed it was controlling.
The evidence further showed that the appellee and her husband had built their home many years prior to 1937, upon what they considered the South boundary of their land, but that under the 1937 survey, their property line would run through the middle of their home. Also, that the new survey would put the South section line of Section 26 about half way the borrow pit.
Briefs were filed, after taking the testimony in the lower court, and the plaintiff raised the question as to whether she, being the holder of a life estate could maintain her suit, which the lower court correctly held she could. And the next question was, had the defendant, the appellant, perfected his title to said land by prescription, being 7 years peaceful occupation without color of title and paying taxes thereon?
The defendant claimed peaceful possession — exhibited a letter from the county tax collector that he had always paid the taxes on his land describing it as being in Section 27.
The lower court held that the defendant had not proved his adverse possession and met the test of paying taxes to establish a valid claim of ownership of said property, and therefore quieted title to said land in the appellee.
From this order this appeal is made.
It is apparent that the lower court was in error in deciding that the defendant had not proved his adverse possession. It was not necessary for him to prove adverse possession, because he was the owner of the disputed property by virtue of the deed *247 acquired by him based upon the original United States Government Survey of 1800.
The 1937 United States Survey -could not alter the property lines and prop■erty rights acquired under an existing United States Government Survey of a ■prior date.
A government dependent resurvey has ibeen defined as follows:
“ ‘When the retracement show that the principal resurvey problem is one of obliteration, with comparative absence ■of large discrepancies, i. e. — that the ■early survey had been made faithfully, then that official survey can be reconstructed or restored as it was in the beginning; the methods applied are termed a ‘dependent resurvey.’
“ ‘The dependent resurvey is designed to accomplish a restoration of what purports to be the original conditions according to the record, based, first, upon identified existing corners of the .original survey and other recognized and acceptable points of control, and, .second, upon the restoration of missing ■corners by proportionate measurement in harmony with the record of the •original survey. This scope of resurvey is applicable to those cases showing fairly concordant situations between ■conditions on the ground and the record ■of the original survey. Title, areas, .and descriptions should remain absolutely unchanged in the typical dependent resurvey.’ ”[1]
This court has said[2] that the evidence had affirmatively shown that the survey ■ of 1932 as to Lots 6 and 7, etc., was a “dependent” resurvey and that the old field notes were used to find the “lost” and “obliterated” corners, and were established in their true original positions as determined by adjustment to accepted corners.
We do not have this situation in the case before us. The 1937 re-survey does not purport to be a retracing of the original survey for the purpose to remove obliteration. No effort to establish a lost line was made.
The Supreme Court of Florida has expressed the controlling law in matters of this kind in Kelsey v. Lake Childs Co., 93 Fla. 743, 112 So. 887 (1927) as follows:
“Rights which have been acquired under government survey cannot be affected or interfered with by a subsequent survey * * * ”.
“Original actual surveys of public lands by the United States government, on the faith of which property rights have been acquired, control over surveys subsequently made by the government which affect such rights.” Kelsey v. Lake Childs Co., supra, citing, Liddon v. Hodnett, 22 Fla. 442; 22 R.C.L. 282.
And as late as 1950, our Florida Supreme Court has outlined with great clarity what we feel is controlling in the present case, in Akin v. Godwin, (Fla.1950), 49 So.2d 604, 607:
“In making a resurvey, the question is not where an entirely accurate survey would locate the lines, but where did the original survey locate such lines. * * * As stated in [8] Am.Jur., Boundaries, Section 1.02, page 819: ‘The object of a resurvey is to furnish proof of the location of the lost lines or monuments, not to dispute the correctness of or to control the original survey. The original survey in all cases must, whenever possible, be retraced, since it cannot be disregarded or needlessly altered after property rights have been acquired in reliance upon it.’ It is generally held, therefore, that a resurvey that changes lines and distances and purports to correct inaccuracies or mistakes in an old plat is not competent evidence of the true line fixed by the original plat.”
*248 The burden was on the plaintiff to prove by competent evidence that the resurvey of 1937, was a re-tracing and reestablishing of lost or obliterated corners or lines. She did not do this. In fact, the evidence tends to establish the contrary. The defendant did not have to prove possession nor payment of taxes. He had a deed calling for the disputed area located in Section 27, as originally surveyed by the United States Government, and which had been accepted and acted upon by adjacent owners, as well as the parties to this suit and their predecessors in title. The effect the resurvey may have on other properties, such as Eglin Air Field is not material.
For the above reasons, we think that the Chancellor should be reversed and title in the appellant confirmed.
Reversed.
RAWLS, C. J., and CARROLL, DONALD K., J., concur.

. Parish v. Spence, 149 So.2d 58, 61 (Fla.App.1st, 1963).

. Ibid.