**FLORIDA FIRST NATIONAL BANK AT KEY WEST, et al v. TRUSTEES OF THE INTERNAL IMPROVEMENT FUND.**

No. 2-931.

Circuit Court, Monroe County.

July 23, 1971.

Frederick H. Kent, Jr. of Kent, Durden & Kent, Jacksonville for the plaintiffs.

Herbert D. Sikes, Tallahassee, for the defendants.

M. IGNATIUS LESTER, Circuit Judge.

*Final judgment:* This cause came on to be heard on the amended complaint of plaintiffs, Wakulla Silver Springs Company and the Florida First National Bank at Key West, and the answer filed by the defendants, the Florida State Board of Trustees of the Internal Improvement Trust Fund. The complaint seeks the determination of the boundary line separating the lands claimed by plaintiffs and the sovereign lands of defendants. The court has considered the factual and legal issues raised by the pleadings; the oral testimony, the documentary evidence and argument of counsel.

This court has jurisdiction of the subject matter and the parties hereto and proper venue lies in Monroe County based upon §69.041, Florida Statutes, and Trustees of the Internal Improvement Fund v. Florida First National Bank at Key West, 237 So.2d 824 (DCA 3 1970). Further, this court finds that there is a justiciable issue.

### Findings of fact

The lands involved in this action are three contiguous government lots, situated on the northeast end of Upper Matecumbe Key and more particularly described as follows —

Government lot 1, section 21 and government lot 2, section 22, township 63 south, range 37 east, Monroe County (claimed by plaintiff Wakulla Silver Springs Company); and

Government lot 1, section 28, township 63 south, range 37 east, Monroe County (which is owned by plaintiff the Florida First National Bank at Key West).

The lands in question were surveyed for the United States by Charles F. Smith in 1873, this survey being approved by the Surveyor General's office in 1874. The United States survey, which is on file in defendants' office shows that the lands involved here were platted and that the acreage of each government lot was computed. The state of Florida, pursuant to that Act of Congress entitled "An Act to Enable the State of Arkansas and Oher States to Reclaim 'Swamp Lands' Within Their Boundaries" (Chapter 84 of the Laws of 1850 which was approved on September 28, 1850) selected the three government lots involved in this cause by lot number and acreage for the state of Florida as "Swamp and Overflowed Lands" on December 17, 1879. The state of Florida, in turn,

conveyed the three lots to plaintiffs' predecessors in title. Each conveyance by the state was also by government lot number and acreage.

It was stipulated that each plaintiff has record title to that lot or those lots claimed by it. Plaintiff Wakulla Silver Springs Company purchased lot 1, section 21 and lot 2, section 22 on March 26, 1941. The Florida First National Bank at Key West purchased lot 1, section 28 on October 5, 1931. Both Plaintiffs have paid all taxes on their lands owed either to the state or to Monroe County on an acreage basis.

The three lots were surveyed for plaintiffs by the firm of Bailey, Glass and Post in December of 1970. A copy of the survey (plaintiffs' exhibit 15) is attached to this judgment. A substantial portion of the lots are typical mangrove swamp. The mangrove swamp is quite low and the slope of the land is negligible. The surveyors determined that the elevations of the mangrove swamp were between .3 feet and .8 feet based upon Sea Level Datum of the Coast and Geodetic Survey (which has no relation to tidal sea level).

There are tidal bench marks in the area of Upper Matecumbe Key; however the data obtained and published by the Coast and Geodetic Survey is insufficient to use as a basis for the accurate determination of mean high water line. Further, there is no other mark or bench mark which can be used to determine accurately the mean high water line on Upper Matecumbe Key.

It is necessary to determine accurately the mean high water line in order to determine accurately the boundary line separating the lands claimed by plaintiffs and the sovereignty lands of defendants. The slope of plaintiffs' land is so small that even a slight error in the vertical measurement of mean high water line would cause a substantial error in the location of the boundary line along the horizontal plane.

The equities of this cause are with the plaintiffs and against the defendants.

### Conclusions of law

"Navigable waters" in the state of Florida shall not be held to be extended to any permanent or transient waters or swamp or overflowed lands, lying over or upon areas conveyed to private individuals by the state without reservation of public rights in and to those waters. §271.09(2), Florida Statutes.

"Overflowed lands" are those that are covered by non-navigable waters, or are subject to such periodical or frequent overflows of

water, salt or fresh (not including lands between high and low water marks of navigable streams or bodies of water, nor lands covered and uncovered by the ordinary daily ebb and flow of normal tides of navigable waters), as to require drainage or levees or embankments to keep out the water and thereby render the lands suitable for successful cultivation. State, ex rel. Ellis v. Gerbing, 56 Fla. 603, 47 So. 353 (1908).

"Sovereignty lands" are all lands under navigable waters within the state, including the shores and spaces, if any, between ordinary low-water mark and ordinary high-water mark, and also all tide-lands, viz, lands covered and uncovered by the daily ebb and flow of normal tides. Pollard v. Hagan, 3 How. 212, 11 L.Ed. 565 (1845). Such lands under navigable waters to ordinary high-water mark and tidelands may, for convenience, be designated as sovereignty, in consequence of becoming a state in 1845. Martin v. Busch, 93 Fla. 353, 112 So. 274 (1927).

Original actual surveys of public lands by the United States government, on the faith of which property rights have been acquired, control other surveys subsequently made by the government which affect such rights. Kelsey v. Lake Childs Co., 93 Fla. 743, 112 So. 887 (1927) citing Groover v. Coffee, 19 Fla. 61 (1882); Coffee v. Groover, 20 Fla. 64 (1883); and Liddon v. Hodnett, 22 Fla. 442 (1886).

In locating a boundary line, natural monuments prevail over courses and distances, and courses and distances prevail over quantity. Trustees of the Internal Improvement Fund v. Wetstone, 222 So.2d 10 (Fla. 1969) and Calder v. Hillsboro Land Company, 122 So.2d 445 (DCA 2 1960).

The "natural monument", the mean high water line, cannot be located; thus the court must rely on the "courses and distances" described in the original United States survey and the field notes supporting that survey. Trustees of the Internal Improvement Fund v. Wetstone, supra.

Plaintiffs have established the material allegations of their complaint and are entitled to the relief prayed for, namely, a judgment declaring the boundary line separating the lands of plaintiffs from the sovereignty lands of defendants to be the meander of the original United States Survey of 1873 and a judgment quieting title to said lands within that line as to each of the plaintiffs as their interests appear.

It is therefore ordered and adjudged that — The boundary line separating lot 1, section 21; lot 2, section 22; and lot 1, section 28,

all in township 63 south, range 37 east, Monroe County, Florida, the lots owned by plaintiffs, from the sovereignty lands held in trust by defendants, be and hereby is declared to be the original meander line of the United States survey of Upper Matecumbe Key made in 1873 and approved in 1874, both the plat and field notes being on file with the defendant, State of Florida Board of Trustees of the Internal Improvement Trust Fund.

All right, title and interest of the defendant State of Florida Board of Trustees of the Internal Improvement Trust Fund and all persons claiming by, through or under them as to the above described lands, whether submerged or not, lying within said meander line be and the same hereby are quieted, vacated, set aside and cancelled as clouds upon the title of plaintiff Wakulla Silver Springs Company as to lot 1, section 21 and lot 2, section 22, township 63 south, range 37 east and upon the title of the plaintiff the Florida First National Bank at Key West as to lot 1, section 28, township 63 south, range 37 east, and that title of each of the plaintiffs as to that government lot or those government lots claimed by it, lying within said meander line, whether or not submerged, be and is forever quieted, cleared, confirmed and forever completely and fully established as against the defendants in this action and against all persons whomsoever claiming by, through or under them.

That the defendants in this action and all persons claiming by, through or under them, are forever prohibited, enjoined and restrained of and from claiming any right, title, or interest, of any nature or kind whatsoever in, to or against those above described lands of the plaintiffs, whether submerged or not, interior to said meander line.