503 So.2d 1275 (1987)
Thomas T. CRENSHAW and Dorothy S. Crenshaw, Appellants,
v.
J. Fritz HOLZBERG, Elfriede Holzberg, Alexander Oliver Holzberg, Bernard John Holzberg, and the City of Naples, Appellees.
No. 86-331.
District Court of Appeal of Florida, Second District.
January 23, 1987.
Rehearing Denied March 16, 1987.
John W. Emerson, Naples, for appellants.
Dwight A. Whigham, of Bigelow and Winesett, Fort Myers, for appellees Holzberg.
CAMPBELL, Acting Chief Judge.
This appeal arises out of a boundary dispute that may be traced to the creation of Collier County out of what had originally been a part of Lee County. At the time that Collier County was created, the original Lee County plat of the subject premises had been incorrectly copied and certified. According to the original Lee County plat, Lot 1, Block 15, Tier 1, Town of Naples was *1276 25 feet wide. The later, hand-drafted copies of the plat that were incorrectly certified and subsequently recorded in Collier County show that lot to be 33 feet wide, an addition of 8 feet to the west. Appellants own the lot in question and appellees own the lot to the west, allegedly including the additional 8 feet. Appellants contend that since they reasonably relied upon the Collier County plat, the correct boundary line is that fixed by the Collier County plat, giving appellants the additional 8 feet to the west. The trial court determined that the original Lee County plat controlled and ruled in favor of appellees. Appellants appeal and we affirm.
The property in issue has not been replatted since the original plat was filed in Lee County in 1887. The original plat of the "Plan of Naples," which portrayed the property in question, was filed August 26, 1887, in the Office of the Circuit Court of Lee County, Florida, and recorded in Plat Book 1, page 8, of the official records of Lee County. Naples was then part of Lee County as Collier County had not yet come into existence. Subsequently, in 1923, Collier County was formed and certified copies of what were purported to be the official records of Lee County were recorded with the Clerk of the Circuit Court of Collier County. Those certified copies were recorded in Collier County, coincidentally, in Plat Book 1, page 8, of the public records of Collier County. The certified copies that became the public record in Collier County referred on their face back to the original plat as being recorded in Lee County Plat Book 1, page 8. In fact, and crucial to our decision, all certified copies of all the plats pertaining to this property, both in the public records of Lee and Collier County, referred on their face back to the original plat as recorded in Lee County in Plat Book 1, page 8.
This boundary dispute has occurred because Lot 1 of Block 15, Tier 1, Town of Naples, as portrayed on the original plat that has been the official record in Lee County since its filing in Plat Book 1, page 8, Lee County public records, is shown to have an east-west dimension of 25 feet. The later, hand-drafted copies that were incorrectly certified and subsequently recorded in the public records of Collier County show the east-west dimension of Lot 1 to be 33 feet. On the original and official recorded plat in Lee County, the dimensions are depicted on each lot. All of the inland lots depicted east-west widths of 33'4", except Lot 1 and its corresponding lots bordering Gulf Shore Boulevard, each of which depicted 25-foot east-west widths. When the subsequent hand-drafted copies of the plat were made, the individual lot dimensions were omitted and replaced by an incorrect marginal notation on the copy of the plat that all lots other than the "beach lots" had 33'4" widths. (Lot 1 and its corresponding lots bordering Gulf Shore Boulevard are not "beach lots.")
Prior to 1925, there were no statutes regulating the filing of plats. In 1925, the legislature enacted chapter 10275, Laws of Florida (1925), which was the predecessor to part I, chapter 177, Florida Statutes (1985), which today regulates platting. Sections 11 and 12 of the 1925 Act provided, as does section 177.111 today, that an approved original plat would be filed with the clerk of the court for the county in which the land is located and that that original would be filed by the clerk in a book of the proper size and kept by the clerk in a vault. It further provided that a print or photographic copy on cloth would be filed and kept in a similar book for use by the public. While those laws were not in effect when the plats in Lee County and Collier County were filed, the testimony below indicates that a similar procedure for recording official plats and displaying copies was followed.
The facts established below show that the original plat of the property in question was recorded in Lee County in Plat Book 1, page 8 and kept in a vault in Lee County. It correctly depicted the width of Lot 1, Block 15, Tier 1, Town of Naples to be 25 feet. A separate hand-drafted copy was displayed for public use. That hand-drafted copy, as we have noted, did not contain individual lot dimensions, but had an incorrect marginal notation that all nonbeach lots were 33'4" wide. That copy, certified *1277 for public use, clearly reflected that it purported to be a copy of the original that was recorded in Plat Book 1, page 8, public records of Lee County, Florida.
Since the Town of Naples had already been platted as a part of Lee County when Collier County was established and the public records were being formulated, copies of the Lee County records were obtained and recorded in Collier County. Unfortunately, the copies obtained were certified copies of the incorrect copy maintained for public use and not certified copies of the original records. Still, those certified copies, obtained and recorded as the official records of Collier County, contained a reference on the face thereof that they purported to be certified copies of the official records of Lee County as contained in Plat Book 1, page 8.
While the facts here appear to present a case of first impression in Florida (and probably one that will not occur again), our conclusion that the trial judge was correct in relying on the original and official records of Lee County has not been that difficult to reach. Appellants' deed by which they claimed title did not refer to or describe the property by dimensions set forth in the deed. The dimensions of the property were described and ascertainable only by reference to the plats.
The law in Florida, and apparently in most other jurisdictions, is clear that in that instance the plat becomes as much a part of the deed as if it were copied therein. Routh v. Williams, 141 Fla. 334, 193 So. 71 (1940); Parish v. Spence, 149 So.2d 58 (Fla. 1st DCA 1963); Pearson v. City of Guttenberg, 245 N.W.2d 519 (Iowa 1976); McDonald v. Kummer, 56 Colo. 153, 137 P. 51 (1913); Heckman v. Kratzer, 43 Ill. App.3d 844, 2 Ill.Dec. 833, 357 N.E.2d 1276 (Ill. App.2d 1976); 1 Patton on Titles, §§ 120, 121, pp. 306-310 (2d Ed. 1957).
The problem in this case arose because one official record, Lee County Plat Book 1, page 8, correctly describes the property, while another official record, Collier County Plat Book 1, page 8, incorrectly describes the property. Appellants' deed describes their property by reference to Plat Book 1, page 8, Collier County, Florida. The crucial point, however, is that when Plat Book 1, page 8 of Collier County is examined, it clearly reflects that it is a copy of Plat Book 1, page 8 of Lee County. If, in turn, the official Lee County Plat book is examined, the correct property dimensions will be discovered.
The authors of 44 Fla.Jur.2d Real Property Sales and Exchanges, §§ 279, 280, pp. 366-367 tell us: "A reference in a recorded instrument to other instruments, irrespective of whether they are recorded or are defectively recorded, may be sufficient to charge purchasers with notice of their provisions." We are also told that "recordation of an instrument required or entitled to be recorded is constructive notice to subsequent purchasers not only of its own existence and contents, but of such other facts concerned with it as would have been ascertained from the record, if the record had been examined and inquiries suggested by it had been prosecuted." Similarly, the authors of 44 Fla.Jur.2d Records & Recording Acts, § 55, p. 511 tell us, in regard to the right to rely on recorded instruments: "[A]n instrument on record is notice not only of its own existence and contents, but also of other facts that would have been learned from the record if it had been examined and that inquiry suggested by it would have disclosed." Perhaps the cases which have holdings closest on point are Parish and Pearson.
In Parish, the first district, in considering the efficacy of two plats, one made from an original survey and the other from a dependent resurvey adhered to its earlier decision in Bishop v. Johnson, 100 So.2d 817 (Fla. 1st DCA 1958), in reference to priorities and validity of conflicting plats. In both cases, the court held that a resurvey that purports to change dimensions or inaccuracies or mistakes in an old plat is not competent evidence of the lines fixed in the original plat.
In Guttenberg, the Supreme Court of Iowa, citing 11 C.J.S. Boundaries, § 61, stated the general rule to be that lines of a senior plat survey will prevail over conflicting lines in a junior survey. The authors *1278 of C.J.S. Boundaries, § 61, emphasize that that rule is true "particularly where the junior is bounded with express reference to the elder... ." See Wildeboer v. Hack, 97 So.2d 29 (Fla. 2d DCA 1957); Gibson v. Wright, 179 So.2d 245 (Fla. 1st DCA 1965).
We therefore conclude that the trial court was correct in holding that the official plat recorded in Lee County Plat Book 1, page 8, being expressly referred to by the Collier County plat referenced in appellants' deed, controls the location of the boundary between the parties' lands.
Appellants also assert claim to the disputed strip of land by adverse possession with color of title. Since appellants' color of title reaches back to the Lee County plat as does appellees' title, there is no conflict between the titles to support adversity based on conflicting sources of title. Akin v. Godwin, 49 So.2d 604 (Fla. 1951).
Affirmed.
SCHOONOVER and LEHAN, JJ., concur.